IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION.

DECEMBER TERM, 1921.

NEUHOFF PACKING CO. *v.* VERNON SHARPE *et al.*[*]

(*Nashville.* December Term, 1921.)

1. **TAXATION.** Packing plant a "manufacturer" within tax law.
A corporation engaged in the business of buying and slaughtering of
live stock, and the buying of meats for curing, rehandling, pack-
ing, and manufacturing into all forms known to commerce, expects
to make a profit by changing or adding property after its purchase,
and hence is a "manufacturer" within Laws 1907, chapter 602,
section 22, requiring manufacturers to pay a tax. (*Post, p.* '301.)

Acts cited and construed: Acts 1907, ch. 602, sec. 24.

Cases cited and approved: Sebastian v. Ohio Candle Co., 27 Ohio
St., 459; Jackson v. State, 15 Ohio, 652.

Cases cited and distinguished: Chattanooga Plow Co. v. Hays, 125
Tenn., 148; Engle v. Sohn & Co., 41 Ohio St., 691.

---

[*]For authorities discussing the question of taxation of manufac-
turing corporations, in general, see notes in 58 L. R. A., 603; 64 L. R.
A., 33.

Constitution cited and construed: Art. 2, sec. 30 (1796).

Case cited and distinguished: Benedict Bros. v. Davidson Co., 110
Tenn., 187.

Neuhoff Packing Co. v. Sharpe.

2. **EVIDENCE.** General knowledge that many things are manufactured from slaughtered animals.

It is a matter of general knowledge that many things are now manufactured from slaughtered animals that were unheard of a quarter of a century ago, and large packing plants are generally referred to as manufacturers. (*Post, pp.* 301, 302.)

Case cited and distinguished: Carlin v. Assurance Co., 57 Md., 526.

3. **TAXATION.** "Produce of the state" does not include horses, cattle, etc.

The term "produce of the state," as used in Constitution article 2, section 30, exempting from taxation all 'articles manufactured "of the produce of the State," is limited to articles produced or grown "from or on the soil," or that that may be "found in the soil," and excludes cattle, horses, sheep, and hogs, even though manufactured into food products within the State. (*Post, pp.* 302, 303.)

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. HARRY A. LUCK, Special Judge.

M. T. BRYAN and LEVINE & LEVINE, for plaintiff in error.

MORTON B. ADAMS, City Attorney, and J. WASHINGTON MOORE, Assistant City Attorney, for defendants in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

The plaintiff in error, Neuhoff Packing Company, is a Tennessee corporation, and operates a packing plant in Nashville.

Vernon Sharpe, city tax assessor of Nashville, assessed the plaintiff in error for the year 1920 as a nonmanufacturing corporation under section 24 of chapter 602 of the Acts of 1907.

It was contended by the plaintiff in error that it was a manufacturing corporation, and that it should be assessed as such under section 22 of the act of 1907, the pertinent part of which is as follows:

"That all persons, copartners, and joint-stock companies engaged in the manufacture of any goods, wares, merchandise, or other articles of value shall pay an ad valorem tax," etc.

The circuit judge and the court of civil appeals were both of the opinion that the plaintiff in error was a manufacturing corporation and subject to assessment as such, and to question this holding the defendants in error have brought the case to this court by petition for writ of *certiorari*.

The business which the plaintiff in error is authorized to engage in, according to the statute, and as same appears in its charter, is as follows:

"The business of said company shall be the buying and slaughtering of live stock and the buying of meats for curing, rehandling, packing, and manufacturing into all forms known to commerce."

Relative to the nature and extent of the business Mr. Neuhoff testified that the principal business of the corporation was the buying and killing of cattle, sheep, and hogs; that when they killed said animals they put them in cold storage and chilled them, and then made different cuts of them, such as hams, bacon, lard, sausage, and all kinds of packing products; that it required skilled labor

to do this work; that the meats have to be chilled right; that a certain temperature has to be maintained; that all the sweet pickle meats have to be cured in brine made of sugar and other ingredients, and the process of curing and preparing said meat for the market in its changed form requires from thirty to sixty days. As an example of how this meat is used, he stated that they make sausage in large quantities, and upon this question he testified as follows:

"We make different kinds of sausage, takes different kinds of meat, and different kinds of spices, and the way it is chopped. Some is chopped finer than others, and different flavors used and put in different cases. You see some long sausages, some round ones, and some is smoked and cooked before we sell it, and some of it is sold raw, like you make it, for instance. This fresh sausage is sold like made without smoking or cooking, and some is smoked, and some is even cooked. For instance, some of the sausage we use veal and beef and pork in it. Nearly all of it is beef and pork mixed."

He testified that the principal business of the plaintiff in error was converting the slaughtered animals into the different products, and that such conversion requires a knowledge of investment and skill in order to do it successfully. He further testified that there were one hundred and twenty-five persons employed in the plant of the plaintiff in error.

As previously stated, the charter provides that the business of the plaintiff in error shall be "the buying and slaughtering of live stock" and "manufacturing into all forms known to commerce."

In *Chattanooga Plow Co.* v. *Hays,* 125 Tenn., 148, 140 S. W., 1068, this court, in pointing out the distinction between a merchant and a manufacturer, said:

"The marked distinction between a manufacturer and a merchant is that the merchant or dealer sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned."

We approve the reasoning of the court in *Engle* v. *Sohn & Co.,* 41 Ohio St., 691, 52 Am. Rep., 103, and quote extensively therefrom as follows:

"During the years 1879 and 1880 John W. Sohn & Co., were a firm engaged in the business of purchasing and slaughtering hogs and packing pork in the city of Hamilton, Butler county. They bought and slaughtered hogs, and subjected the same to certain processes and combination with other materials, requiring the application of skill, labor, and capital, and converted them into lard and cured meats, for the purpose of adding to the value thereof, with the view of making gain or profit. It required about forty men to carry on the business, which was conducted under several departments, each requiring the supervision of a foreman possessed of skill and experience. In rendering lard, curing sides and shoulders, curing, smoking, and canvasing hams, and packing pork, it became necessary to use other raw material of various kinds, such as salt, saltpeter, saleratus, sugar, molasses, flour, chrome yellow, linseed oil, canvas, wood, paper, barrels,

tierces, and kegs, and also to use various tools, implements, and mechanical devices. The process of curing hams required about three months. They were then ready for smoking, which occupied from six to eight days, when they were wrapped, canvased and dipped in a mixture, to render them air tight and proof against atmospheric influences and insects. The different branches of the business were carried on together in one building. Sohn & Co. cured all their own meats, and did not deal in meats cured by others. In former years those that slaughtered were not in the packing business, and packers did not slaughter; but for several years the two branches of business had been, as now, combined. . . .

"The question for our consideration is whether upon the facts in the case at bar the defendants in error were taxable as merchants or manufacturers. If taxable as manufacturers only, they were required to return for taxation, as they did, the monthly average value of the raw material which they had on hand during the preceding year, in the same condition in which it was purchased, received, or otherwise held for the purpose of being used by them in their manufacturing business. But they were not required to list for taxation such material in a manufactured or partly manufactured state, unless manufactured one year or more previous thereto, as it was not the intention of the legislature to tax the labor, skill, and capital which, when in combination with the raw material, produced the manufactured article. *Sebastian* v. *Ohio Candle Co.,* 27 Ohio St., 459.

"The question therefore recurs: Were Sohn & Co., for purposes of taxation, merchants under section 2740, or manufacturers under section 2742, of the Revised Stat-

utes. By section 2740, 'Every person who shall own or have in his possession, or subject to his control, any personal property within this state, with authority to sell the same, which shall have been purchased either in or out of this state, with a view of being sold at an advanced price or profit, or which shall have been consigned to him from any place out of this State, for the purpose of being sold at any place within this State, shall be held to be a merchant.'

"And under section 2742, 'Every person who shall purchase, receive, or hold personal property of any description, for the purpose of adding to the value thereof by any process of manufacturing, refining, rectifying, or by the combination of different materials, with a view of making a gain or profits by so doing, shall be held to be a manufacturer.'

"In both definitions there is the common element of purchasing personal property, with a view of making a gain or profit. But the definition of a manufacturer contemplates the attainment of such object by adding to the value of the property after purchase, by some process or combination with other materials, while the merchant is supposed to get his advanced price or profit by selling the article as it is, without subjecting it to any change by hand, by machinery, or by art. The material entering into the manufactured article may be modified, more or less, in its identity, as it passes through the several stages of a manufacturing process; but the merchant deals in the manufactured article itself, or its constituents, by buying and selling them in the same condition in which he purchases them. His business is that of exchanges, and not of making or fabricating from raw materials.

"The occupation of the defendants in error was, we think, essentially that of manufacturers. By the use of tools, implements, and mechanical devices; by subjecting the slaughtered animals to divers processes, running, some of them, through several months; by a combination with various materials and ingredients requiring skill, care, and attention—products were obtained in the form of pork, lard, and cured meats, to which may appropriately be applied the term manufactured articles. The original substance though not destroyed, was so transformed through art and labor that without previous knowledge it could not have been recognized in the new shape it assumed, or in the new uses to which it was applied. One who produces such results may as correctly be designated a manufacturer as he who buys lumber, and planes, tongues, grooves, or otherwise dresses the same, or as he who by a simple process makes sheets of batting from cotton, or as he who buys fruit and preserves the same by canning—all of whom have been held to be manufacturers, and taxed as such, under the internal revenue laws of the United States. 9 Internal Revenue Record, 193; 5 Id. 180; Internal Revenue Decisions, 117, No. 171. . . .

"During the past forty years the business of slaughtering and meat packing, from a small beginning, has grown to such magnitude that it is now ranked as one of the great industries of the country. It is placed in our federal census among the mechanical and manufacturing industries of our large cities. In its different departments the aid of science and art and inventive talent have been invoked, and new and improved methods have been devised for facilitating and perfecting its various processes. The perfection of manufacturing,' it has been said, 'consists in

the being able to effect the wished for changes in the raw material, with the least expenditure of labor or at the least cost.' With such a test alone there would be no hesitation in ranking this industry, in its present advanced state, among our most effective branches of manufacture.

"These views, it may be urged, are in conflct with the decision of the court in *Jackson* v. *State,* 15 Ohio, 652. The facts in that case appear to be meagerly reported. The appellant, who was a citizen of the State of Pennsylvania, 'engaged in the business of purchasing, slaughtering, and packing pork for transportation and sale' at Columbus, Ohio. HITCHCOCK, J., was 'not prepared to say,' that a person so engaged was a manufacturer within the meaning of the statute. We are, however, satisfied that, if the facts had been the same as in the case at bar, if there had been in the year 1846 the same perfection in the art of packing and curing meats which has since been reached and now exists, Jackson would have been held to be a manufacturer and not a merchant.

"The conclusion to which we have arrived is that Sohn & Co. were manufacturers."

It is apparent from the nature of the business that the plaintiff in error expected to make a profit by changing or adding to the property after purchased, and hence it is a manufacturer.

It is a matter of general knowledge that many things are now manufactured from the slaughtered animal that was unheard of a quarter of a century ago, and our large packing plants are generally referred to as manufacturers.

In *Carlin* v. *Assurance Co.,* 57 Md., 526, 40 Am. Rep., 440, it is said:

"Whilst, from its derivation, the primary meaning of the word 'manufacture' is making with the hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, . . . are now commonly designated as 'manufactured.' "

There can be no doubt but that plaintiff in error is a "manufacturer" as that term is understood and used in modern parlance.

The plaintiff in error has also brought the case to this court by a petition for a writ of *certiorari*, in which it complains that the defendant in error Vernon Sharpe assessed its stock of goods on hand in its plant, consisting of fresh meats, cured meats, sausage, and other products manufactured from slaughtered animals, in the sum of $168,000, which it insists was not subject to taxation for the reason that said articles were manufactured from the produce of this State, and that any tax thereon is in violation of article 2, section 30, of the Constitution of the State, which is as follows:

"No article manufactured of the produce of this State, shall be taxed otherwise than to pay inspection fees."

This identical section was contained in the Constitution of 1796.

The question is: Does the produce of the State include cattle, horses, sheep, and hogs?

This question was considered by this court in *Benedict Bros. v. Davidson County,* 110 Tenn., 187, 67. S. W., 807, in which it was said:

"We are of opinion that the term 'produce of the State' is intended to embrace whatever is produced or grown in the State, or is the yield of the State, whether it be crops or timber or coal or iron or marble or wood, or any other article which may be treated as produced or grown within the State from or on the soil, or may be found in the soil."

The term was limited to articles produced or grown "from or on the soil," or that that may be "found in the soil," and therefore excludes animals, which are neither produced "from or on the soil" or "found in the soil."

The purpose of this provision of the Constitution was to encourage manufacture, and the framers of the Constitution were dealing with manufactured articles and providing for their exemption. They did not exempt the original products, and it was only after their form had been changed that they could be exempted.

When the Constitution of 1796 was adopted, there were no packing houses in existence, artificial ice and refrigeration were unknown, and the manufacture of fertilizer and by-products out of the carcasses of animals were unthought of, and hence were not contemplated in inserting this section of the Constitution.

Our conclusion is, therefore, that the plaintiff in error is a manufacturer, and that its stock of goods was not exempt from taxation.

The circuit judge and the court of civil appeals so held, and their judgments will be affirmed.

The plaintiff in error will pay one-half of the costs of the appeal, and the defendants in error will pay the remainder.