UNITED BISCUIT CO. *v.* STOKES, COM'R.

(*Nashville,* December Term, 1938.)

Opinion filed Feb. 4, 1939.

TRABUE, HUME & ARMISTEAD and CHARLES C. TRABUE, JR., all of Nashville, for complainant.

ROY H. BEELER, Attorney-General, and DUDLEY PORTER, JR., Assistant Attorney-General, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a proceedings under the declaratory judgments statute, Code, section 8835 *et seq.*, to determine the liability of a complainant for a merchant's privilege tax respecting business done by it in Hamilton County and in Knox County. The bill sets out a state of facts upon which the complainant insists it is not liable for the tax in question at either point. The Commissioner demurred to the bill. The chancellor overruled the demurrer and the Commissioner has appealed.

It is alleged that complainant is a manufacturer of

crackers, biscuits, and the like, its manufacturing plant being located in Nashville. That the goods it manufactures are of a highly perishable nature and must be delivered to its customers fresh. That to facilitate deliveries the complainant rents warehouse space in Knoxville and warehouse space in Chattanooga and keeps on hand sufficient stock in those places to supply the orders and anticipated orders of its customers in those localities for a few days. That there is a rapid turnover in these stocks, perhaps two turn-overs in each week. Some goods are distributed to its customers from the two warehouses on orders sent directly to Nashville and some goods distributed on orders to the warehouses on a C. O. D. basis and collections forwarded to Nashville.

All the biscuits, crackers, etc., delivered from the warehouses are manufactured at Nashville. These goods are sold in the Knoxville and Chattanooga localities at the same prices at which they are sold at Nashville. There is no additional charge for freight or transportation to Knoxville and Chattanooga territories. The complainant has paid all taxes assessed against it as a manufacturer at Nashville.

The Commissioner insists that the case of *American Steel & Wire Co.* v. *Speed*, 110 Tenn., 524, 75 S. W., 1037, 1038, 100 Am. St. Rep., 814, is controlling. In that case the American Steel & Wire Company massed products of its various factories in other States at Memphis and such products were distributed to its customers in the Southwest territory from the Memphis warehouse. Most of these sales were made in pursuance of previous orders given to the manufacturer's traveling salesmen. These orders were not specific, however, and at the time of delivery the customers specified particular grades of the

products ordered to be selected from the mass at Memphis. Some sales were made to the Memphis trade out of the mass in the warehouse without any previous orders. Further details of the plan of distribution are set out in the report of the case above cited.

The opinion in *American Steel & Iron Co.* v. *Speed* shows that ''in fixing the price of its goods, the complainant always, except when necessary to lower prices in order to meet competition, figures in the freight on the goods.'' Further in the opinion it is shown that the goods assembled in the Memphis warehouse were brought from the factories to Memphis on river barges and that such shipments were made in times of high water when river transportation was available from all of the manufacturer's plants.

Since prices made for delivery to an Arkansas merchant or to a Mississippi merchant included freight from the factory to these points of delivery, the manufacturer took a definite profit by reason of assembling its goods in the Memphis warehouse and delivering from Memphis. The merchant in Mississippi and in Arkansas was charged with rail transportation from the manufacturer's plant. The manufacturer got the benefit of the river transportation by barge, the greater part of the cost of transportation, by reason of maintaining this warehouse at Memphis, and its course of business. Thus it appeared that the manufacturer took a merchant's profit out of its Memphis warehouse and it was accordingly held liable for the merchant's tax.

As above seen, prices made by the complainant before us to its customers served from the Knoxville and Chattanooga warehouses include no charge for transportation. The prices are the same as those made to its cus-

tomers in the Nashville territory to whom deliveries are made directly from the factory.

Complainant here relies on *Chattanooga Plow Co.* v. *Hays*, 125 Tenn., 148, 140 S. W., 1068, 1069, and we think that case is controlling. Before considering this case, it may as well be conceded that there is a difficulty in harmonizing all the language used therein with everything that was said in *American Steel & Iron Co.* v. *Speed*, *supra*.

In *Chattanooga Plow Co.* v. *Hays,* a manufacturer of agricultural implements stored and kept in its warehouse, adjacent to its factory, a stock of manufactured implements, and parts of implements, sufficient to supply the anticipated wants of its customers for a short period. An effort was made to exact a merchant's privilege tax of this manufacturer by reason of the maintenance of its warehouse. This effort was unsuccessful. The court held that the maintenance of the warehouse did not make a merchant of this manufacturer. It was said:

"The marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned."

Further the court said:

"The complainant has no storerooms apart from its factory, and does not store its wares, except to fill orders received, or which, as a result of many years of experi-

ence and close business calculation, it can safely anticipate."

From the foregoing it is apparent that the only difference in the course of business pursued by the manufacturer in *Chattanooga Plow Co.* v. *Hays* and the manufacturer in the case before us is that the storerooms of the complainant here are located apart from its factory, in different cities. It does not seem to us that this difference between the two cases calls for the application of a different rule. Since the record does not indicate that the manufacturer before us takes any merchant's profit, or any additional profit, by reason of the maintenance of these warehouses at Knoxville and Chattanooga, we do not think the operation of such warehouses in the manner and for the purposes described render the complainant liable for the merchant's tax.

The mere circumstance that a manufacturer's product is not distributed to the trade from its factory, or from a warehouse adjacent to the factory, does not call for the exaction of a merchant's privilege tax. This is apparent from *Chero-Cola Bottling Co.* v. *McDaniel*, 145 Tenn., 615, 237 S. W., 1101. The manufacturer in that case made deliveries in Wilson County from its truck sent there to supply the wants of its customers in the Lebanon territory. The attempt was to assess the manufacturer with a transient merchant's privilege tax (section 4, chapter 134, Pub. Acts of 1919) by reason of the operation of this truck. The manufacturer was held not liable for such tax on authority of *Chattanooga Plow Co.* v. *Hays, supra,* although its plant was at Nashville.

The merchant's privilege tax sought to be collected here is imposed in Item 60, Section 1, Article 2, chapter 108, Pub. Acts of 1937, on "every person engaged

in the mercantile business in this State." Further in this Item merchants is defined to include all "persons selling or offering for sale any article or product in any manner not in this bill or by other law classified for taxation or exempted from taxation." Manufacturers, such as the complainant, are classified for taxation in section 1407 of the Code. They are not in the mercantile business, in our opinion, as that term is used in the revenue statutes.

It should have been observed that complainant here, just as complainants in the other cases cited, sells only to the trade, making no retail sales whatever.

Affirmed.