The BEARE COMPANY, Appellant,

v.

TENNESSEE DEPARTMENT OF REVENUE, Appellee.

Supreme Court of Tennessee, at Nashville.

July 12, 1993.

Ellen B. Vergos, Waring Cox, Memphis, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Daryl J. Brand, Asst. Atty., Nashville, for appellee.

## OPINION

REID, Chief Justice.

This appeal presents for review the denial by the Department of Revenue of The Beare Company's application for authorization to purchase water, electricity, and natural gas at the reduced sales tax rates provided by T.C.A. § 67–6–206(b)(1). The chancery court made findings of fact, which substantially conformed to the findings made by the administrative law judge. The court held that, under the statute, the taxpayer is not entitled to the exemption and affirmed the decision of the administrative law judge.

The concurrent findings of fact of the administrative law judge and the trial court are conclusive on appellate review. *C.F. Industries v. Tennessee Public Service Comm'n,* 599 S.W.2d 536, 540 (Tenn. 1980). However, the construction of the statute and application of the law to the facts is a question of law. *See* T.C.A. § 4–5–322(h)(1) (1991); *Moto–Pep v. McGoldrick,* 202 Tenn. 119, 303 S.W.2d 326, 330 (1957).

The pertinent portion of the Chancellor's findings of fact are as follows:

The Beare Company is engaged in the business of preserving food products by freezing and cold storage. Beare operates plants at Humboldt, Tennessee, and Jackson, Tennessee. Each plant includes facilities for "blast freezing" and also what are referred to as "holding freezers." Beare is not in the business of producing or selling food, but provides freezing and storage services for its customers.

. . . . .

[T]he Beare Company's revenues derive from four types of activities: "blast freezing," "handling," "preservation," and "special services." Each of these activities is stated on Beare's bills to its customers as a separate and distinct service. . . .

"Blast freezing" is performed on food products received by Beare in a fresh or raw condition. Such goods are blast frozen by Beare by drastically lowering the temperature of the products to zero degrees Fahrenheit or below within a period of 72 hours. During the course of such blast freezing, the food products undergo certain chemical and/or molecular changes. . . .

"Handling" includes the physical movement of goods from loading docks into Beare's facilities, and then later moving the goods back to the trucks for shipment.

"Preservation" is the storage of already frozen goods in "holding freezers," where the products are maintained in a frozen state. The purpose of preservation storage is to maintain the low temperature of the products to prevent deterioration or spoilage. Storage in the holding freezers does not cause further changes in the product, but is intended to prevent change and to maintain the product as is. . . .

"Special services" include miscellaneous activities such as wrapping, stamping and stenciling, employee overtime, assisting government inspectors, and "trichinosis certification."

The record shows the amount of revenue received with regard to fresh food which is blast frozen and maintained, and food which is received in a pre-frozen state and maintained until redelivered by Beare to its customers. The percentage of total revenue attributed to each service from November 1, 1987, through July 31, 1988, at each plant was, as follows:

|  | Humboldt | Jackson |
|---|---|---|
| Blast freezing raw products | 18% | 1.6% |
| Maintenance of products blast frozen | 22% | 18.7% |
| Maintenance of prefrozen products | 26% | 49.7% |
| Handling blast frozen products | 15% | 5.4% |
| Handling prefrozen products | 9% | 23.2% |
| Special services re blast frozen products | 9% | .4% |
| Special services re prefrozen products | 1% | 1.0% |

The reduced tax rates apply only to water and energy fuels "sold to or used by manufacturers." T.C.A. § 67–6–206(b)(1) (1989). A "manufacturer" is defined "as one whose principal business is fabricating or processing tangible personal property for resale." T.C.A. § 67–6–206(b)(2). If at least 51 percent of a taxpayer's revenues at a given location are derived from fabricating or processing tangible personal property for resale, the taxpayer is considered to be a manufacturer at that location. *Tennessee Farmers Cooperative v. State*, 736 S.W.2d 87, 91–92 (Tenn.1987). The determinative issue then is which, if any, of the activities performed by the taxpayer constitute "processing." Processing is not defined by the sales tax statutes; consequently, it must be given its ordinary and commonly accepted meaning. *Western Pipeline Constructors, Inc. v. Dickinson*, 203 Tenn. 248, 254, 310 S.W.2d 455, 458 (1958). Courts of other states have defined processing for purposes of determining sales tax exemptions. The term was defined in *Gressel Produce Co. v. Kosydar* as follows:

> ["Processing" is] essentially a transformation or conversion of materials or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products.

*Gressel Produce Co. v. Kosydar*, 297 N.E.2d 532, 535 (Ohio 1973) (cleaning, cooling, sorting, and application of oil to eggs did not constitute "processing" because there was no change in the state or form of the eggs). In another case, the Ohio courts emphasized that mere enhancement of the value of a product, absent a *change* in "state or form" from that in which it originally existed, does not constitute "process-

ing." *Sauder Woodworking Co. v. Limbach,* 527 N.E.2d 296, 297 (Ohio 1988) (packaging material in which furniture is shipped and sold is not used during the manufacturing or processing period, and is therefore not exempt from sales and use taxes).

Courts in other states have recognized that changing the condition of raw foods is processing. *See e.g. Comm'r of Carroll County v. B.F. Shriver Co.*, 146 Md. 412, 126 A. 71 (1924) (corn husked, sorted, washed, cut from the cob, and canned); *Stokely–Van Camp, Inc. v. State*, 50 Wash.2d 492, 312 P.2d 816 (1957) (vegetables sorted, cleaned, cut, blanched, packaged, and frozen); *Bornstein Sea Foods, Inc. v. State*, 60 Wash.2d 169, 373 P.2d 483 (1962) (filleting, packaging, and freezing fish); *Perdue Foods, Inc. v. State Dept. of Assessments*, 264 Md. 672, 288 A.2d 170 (1972) (chickens slaughtered, dressed, packaged, and cooled); *Bain v. Dept. of Revenue*, 293 Or. 163, 646 P.2d 12 (1982) (production of fish using "mechanical, chemical and electronic processes"). After considering several definitions of "processing," the Iowa Supreme Court has concluded that "there is a close analogy between applying heat to foodstuffs in order to sterilize and preserve them and subjecting food to below zero temperatures for several days for a similar purpose. Freezing appears to be as clearly processing as cooking does." *Fischer Artificial Ice & Cold Storage Co. v. Iowa State Tax Comm'n*, 248 Iowa 497, 81 N.W.2d 437, 441 (1957).

This Court has recognized the distinction between "processing" and material handling or storage. *Woods v. General Oils, Inc.*, 558 S.W.2d 433, 436 (Tenn.1977). Oth-

er courts have also distinguished between "processing," on the one hand, and preservation or storage on the other. In *Warren v. Fink*, 146 Kan. 716, 72 P.2d 968 (1937), a grocer claimed exemption for electricity used to operate refrigeration equipment in which he stored meat, milk, vegetables, and other perishables held for sale to his customers. Warren argued, as does The Beare Company here, that he was a "processor" because the cooling system was necessary to preserve the food products in suitable condition for sale. *Id.* 72 P.2d at 969. The court ruled that Warren was not a "processor," and denied the exemption, because:

> What is done is to preserve these commodities in substantially the same condition. It is quite different from the use of refrigeration to make ice cream from milk and other ingredients, or from making a new or different article by heat.

*Id.* at 970.

Based on these definitions, the initial blast freezing, together with the maintenance of that frozen condition and the handling and special services related to the blast frozen products constitute "processing" within the meaning of the statute, while the mere preservation of the prefrozen condition and the handling and special services related to those products do not constitute "processing."

Processing, then, at the Humboldt plant produces more than 51 percent of that plant's total revenue, while processing at the Jackson plant produces less than 51 percent of the revenue. The result is that the Humboldt plant qualifies for the reduced rate, but the Jackson plant does not.

The judgment of the Chancery Court is partially reversed in accordance with this opinion, and the case is remanded to the trial court.

Costs are taxed one-half to The Beare Company and one-half to the Department.

DROWOTA, DAUGHTREY and ANDERSON, JJ., concur.

O'BRIEN, J., dissents.

O'BRIEN, Justice, dissenting.

I am constrained to dissent in this case because the majority, by expanding, beyond its outer limits, the definition of the word "processing," as used in the statute, have made every freezing and cold storage warehouse in the State of Tennessee a potential manufacturer as defined in T.C.A. § 67–6–206(b)(2). To accomplish this feat they have overruled the Department of Revenue of the State of Tennessee, an Administrative Law Judge and the Chancery Court of Davidson County, the next succeeding agency in the line of ascension for appellate review.

The provision of T.C.A. § 67–6–206 which has resulted in this controversy is the imposition of a reduced tax rate with respect to water, gas, electricity, fuel oil, coal and other energy fuels when *sold to or used by* manufacturers. The statute defines a manufacturer as one whose *principle business* is fabricating or processing tangible personal property for resale.

The majority opinion isolates a number of decisions from sister states which recognize "that changing the condition of raw foods is processing." It then cites the case of *Fischer Artificial Ice & Coal Storage Co. v. Iowa State Tax Commission*, 248 Iowa 497, 81 N.W.2d 437, 441 (1957), for the conclusion that "there is a close analogy between applying heat to food stuffs in order to sterilize and preserve them and subjecting food to below zero temperatures for several days for a similar purpose. Freezing appears to be clearly processing as cooking does." The majority also cites *Woods v. General Oils, Inc.*, 558 S.W.2d 433, 436 (Tenn.1977), for the premise that this Court has recognized the distinction between "processing" and material handling or storage. There is no relationship between the issues in that case and the one before us.

Based on the definitions cited in the majority opinion the Court holds that "the initial blast freezing, together with the maintenance of that frozen condition and the handling and special services related to the blast frozen products constitutes *'processing'* within the meaning of [T.C.A.

§ 67–6–206], while the mere preservation of the pre-frozen condition and the handling and special services related to those products do not constitute '*processing.*'

"Processing, then, at the Humboldt Plant produces more than fifty-one percent (51%) of that plant's total revenue, while processing at the Jackson plant produces less than fifty-one percent (51%) of the revenue. The result is that the Humboldt Plant qualifies for the reduced rate but the Jackson plant does not."

The distinction between the maintenance in a frozen condition of products blast frozen by Beare Company for its customers and the preservation of pre-frozen products stored in its holding freezers escapes me.

What the majority opinion overlooks is the testimony of the President of Beare Company to the effect that the principal customers at the Humboldt Plant have a wide variety of prepared frozen food such as TV Dinners, Entrees, Pies, Mexican Food, Chinese Food, etc. Reelfoot Packing Company is a producer of pork products, pork chops, ribs, spareribs, bologna, sausage, bacon, this type of product. The produce Beare blast freezes is beef and pork. After it is blast frozen it is either shipped out or placed in the holding room according to the instructions of the customers. The administrative judge inquired from Mr. Beare, "For example, your relationship to Reelfoot at the present time, are you primarily storing their processed product on the way to distribution within the retail outlets, or are you acting as some process (sic) in their receipt and then ultimate processing of their food?" He responded, "What we do is, everything that we receive from them is fresh, and then we freeze it for them. Their business is divided up into two (2) categories called commercial, which goes to institutions or grocery stores, and then the other part is Army, which goes for the commissaries in the United States as well as Europe." As a general rule, 25% of the merchandise would go back to the packing company, and 75% would go on to customers.

The problem with the conclusion of the majority is that Reelfoot Packing Co., the real manufacturer, is also a processor, governed by the Tennessee Meat and Poultry Inspection Act. T.C.A. § 53–7–202(23) defines a "processor" as a person who engages for profit in this State in the business of packing or packaging carcasses, meat, meat food or meat by-products, or poultry or poultry products, for human consumption or a person engaged for profit in the business of curing, salting, processing or other preparing of carcasses, meat, meat food products or meat by-products for human consumption.

In *Chattanooga Plow Co. v. Hayes,* 125 Tenn. (17 Cates) 148, 156, 140 S.W. 1068 (1911), the Court defined a manufacturer as follows:

"A manufacturer is one engaged in making materials, raw or partly finished, into wares suitable for use. The marked distinction between a manufacturer and a merchant is that the merchant, or dealer, sells to earn a profit, and the manufacturer sells to take profit already earned. He must buy the materials out of which to make his finished product, and he must sell the product of his factory after it is finished. But such dealings are not his occupation. The one supplies him with the materials with which to pursue it, while the other merely enables him to take the profit earned." (Citations omitted).

*Chattanooga Plow,* supra, was cited with favor in *Neuhoff Packing Co. v. Vernon Sharpe, et al,* 146 Tenn. 293, 240 S.W. 1101 (1921), in which this Court held that where a packing house operation in which the business of the company was "the buying and slaughtering of livestock and the buying of meats for curing, rehandling, packing and manufacturing into all forms known to commerce," there was no doubt that the occupation was as a manufacturer.

In *Neuhoff,* supra, this Court also approved the reasoning of the trial court in *Engle v. Sohn & Co.,* 41 Ohio St., 691, 52 Am.Rep., 103, which included that State's statutory definition of a manufacturer:

"Every person who shall purchase, receive, or hold personal property of any description, for the purpose of adding to the value thereof by any process of manufacturing, refining, rectifying, or by the

combination of different materials, with a view of making a gain or profits by so doing, shall be held to be a manufacturer."

The Beare Company neither owned nor sold the produce it earnestly insists it processed. Its business was selling a service, in this case, to various manufacturers who required the need of that service to complete the marketability of their products. The Company's revenues derived from its charges for its various services and were not the result of a gain in the value of its customers products by virtue of the processing service which it rendered. *See United Biscuit Company v. Stokes,* 174 Tenn. 111, 124 S.W.2d 230 (1939). In this case all of the Beare Company's customers were wholesalers whose principle business was the fabrication or processing of tangible personal property for resale at retail by their customers.

Even though "manufacturer" has popular meaning, all persons who can be said to manufacture an article are not to be classed as "manufacturer" regardless of circumstances, and everyone who manufactures is not embraced within the legal meaning of the term, but rather only those who manufacture articles of trade as the principal part of their business. A manufacturer makes to sell, and depends for his profit on the labor which he bestows on the raw material. He stands between the original producer and the dealer, or first consumer. C.J.S., Vol. 55, Manufacturers, p. 673.

If anything further need be noted it is that T.C.A. § 67-6-206 is part and parcel of the *"Retailers Sales Tax Act,"* T.C.A. § 67-6-101, et seq., and has nothing to do with the freezing, storing and *wholesale distribution* of the products of the Beare Company's customers. This case is not to be compared with the situation in *Tennessee Farmers Co-Op v. State,* 736 S.W.2d 87 (Tenn.1987), in which the Co-Op was engaged in the business of manufacturing goods to be sold in its own retail outlets.