# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 26, 2000 Session

## STATE OF TENNESSEE v. CHRIS A. JEFFERSON

### Direct Appeal from the Criminal Court for Sullivan County
### No. S42,598    Phyllis H. Miller, Judge

_____

### No. E2000-00429-CCA-R3-CD
### December 8, 2000
_____

Chris A. Jefferson appeals a certified question of law regarding a police officer's stop of him which resulted in his arrest for driving under the influence. Because we agree with the trial court that reasonable suspicion supported by specific and articulable facts existed for the stop, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY L. SMITH, JJ., joined.

Thomas McKinney, Jr. and Clyde L. Tootle, Kingsport, Tennessee, for the appellant, Chris A. Jefferson.

Paul G. Summers, Attorney General & Reporter, Elizabeth B. Marney, Assistant Attorney General, H. Greeley Wells, Jr., District Attorney General, J. Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Chris A. Jefferson, appeals a certified question reserved pursuant to his guilty plea to the crime of driving under the influence. Jefferson claims that the arresting officer's observation that Jefferson was weaving within his lane of traffic did not amount to reasonable suspicion that a crime had been or was about to be committed. Therefore, he reasons, the officer's stop of him was improper, and ultimately, his conviction cannot stand. However, we hold that the trial court correctly determined that the stop was predicated upon reasonable suspicion supported by specific and articulable facts. Therefore, we affirm the judgment of the trial court.

The evidence adduced at the suppression hearing consisted solely of the testimony of Officer Gary Medilin of the Sullivan County Sheriff's Department. In the early morning hours of March 5, 1999, Officer Medilin was on the road when he went through a "small ball of traffic"

and found the defendant at the front of the traffic. He immediately noticed that the defendant was "cutting a 'z' continuously" in his lane of travel. The defendant was traveling back and forth from the lane divider to the line on the shoulder, although he did not leave his own lane of the road. The officer followed the defendant for two to three-tenths of a mile and observed the defendant weaving the entire time. The officer testified that it appeared as if the defendant was negotiating a slalom course. The officer testified that the defendant's driving was very much out of the ordinary and erratic. Further, according to the officer, if the defendant had encountered other traffic, he would have considered the defendant's driving to be reckless. Officer Medilin observed nothing on the roadway or about the defendant's vehicle which would explain the manner in which the car was traveling.

The trial court found that these facts created reasonable suspicion that criminal activity had been or was about to be committed and therefore denied the motion to suppress. Thereafter, the defendant pleaded guilty to driving under the influence but reserved the stop issue as a certified question of law. See Tenn. R. Crim. P. 37(b)(2)(i).

In reviewing suppression issues which required the trial court to consider issues of credibility, the proper standard is the preponderance of the evidence standard. State v. Guy Binette, — S.W.3d —, No. E1999-00236-SC-R11-CD, slip op. at 2-3 (Tenn. Oct. 5, 2000); see also State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. Odom, 928 S.W.2d at 23; see also Tenn. R. App. P. 13(d). However, the application of the law to the facts is a question which an appellate court reviews *de novo*. Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993). We consider the issue in this appeal with these standards in mind.

An automobile stop constitutes a "seizure" within the meaning of both the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution. See Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). Probable cause is not required for an investigative stop. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); State v. Coleman, 791 S.W.2d 504, 505 (Tenn. 1989). In Terry, the Court held that a "stop and frisk" is constitutionally permissible "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous . . . ." Terry, 392 U.S. at 30, 88 S. Ct. at 1884. Generally, the police are entitled to stop a car briefly for investigative purposes if they have a reasonable suspicion, based upon specific and articulable facts, that an offense is being or is about to be committed. See Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401 (1979); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). A court must consider the totality of the circumstances when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. State v. Yeargan, 958 S.W.2d 626, 632 (Tenn. 1997).

In the present case, the defendant contends that no reasonable suspicion could exist where the only evidence that he was committing the criminal offense of driving under the influence was the officer's observation that he was weaving within his lane of travel. This is not the first "weaving within the lane" case to come before the Tennessee appellate courts. In many cases, a defendant's weaving within the lane has been but one of the facts considered in assessing whether reasonable suspicion existed. See, e.g., State v. Floyd Lee Williamson, No. 02C01-9803-CC-00085 (Tenn. Crim. App., Jackson, Apr. 1, 1999) (officer alerted to suspicious vehicle complaint, followed the defendant's vehicle for approximately two miles, observed the vehicle drift back and forth within the lane, cross the center line at least once, and drive at slightly more than one-half the speed limit); State v. Stuart Allen Jenkins, No. 01C01-9712-CR-00590 (Tenn. Crim. App., Nashville, Dec. 21, 1998) (trooper located the defendant's vehicle after being notified of a suspected drunk driver and observed the vehicle for approximately one mile, and saw it "weaving excessively" within its lane of travel). However, our appellate courts have also considered "weaving within the lane" cases in which that evidence was the only basis for the officer's stop.

Recently, the supreme court decided State v. Guy Binette, — S.W.3d —, No. E1998-00236-SC-R11-CD (Tenn. Oct. 5, 2000).[1] That case is relevant both factually and legally. In Guy Binette, an officer stopped the defendant after observing him weaving within his lane of travel. Id., slip op. at 5. Upon *de novo* review of the videotape taken from the officer's car during his observations preceding the stop, the supreme court found that the defendant's movement was entirely within the defendant's own lane of travel and was not exaggerated. Id. The key, said the court, is not "[t]he number of times that a vehicle touches the center line or drifts within a lane. . . . Rather . . . a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated." Id. The court observed that rare was the driver who could travel in a perfect course on the road, and allowing a finding of reasonable suspicion based upon only minor imperfections in driving would essentially create a "stop at will" standard which would run afoul of the guarantees of the Fourth Amendment. Id., slip op. at 5-6. In applying the law to the case before it, the supreme court noted that the defendant's movement within his lane "was not pronounced, and therefore did not give rise to reasonable suspicion that he was under the influence of an intoxicant."[2] Id., slip op. at 6. As such, the court reversed the defendant's conviction and dismissed the charge. Id.

In State v. Don Palmer Black, No. 03C01-9812-CR-00424 (Tenn. Crim. App., Knoxville, Dec. 29, 1999), we upheld the trial court's determination that reasonable suspicion for a traffic stop existed where the arresting officer observed the defendant weaving within his lane and swerving to the right twice, almost hitting the curb of the roadway. The arresting officer described

---

[1] The significant rule of law of Guy Binette is the announcement of a *de novo* standard of appellate review for evidence that does not involve issues of credibility. See Guy Binette, slip op. at 3. Although that standard of review does not apply to the case at bar, that case is otherwise instructive because of its factual similarity.

[2] The supreme court found that officer's statements about his observations, made on the videotape, conflicted with the visual contents of the videotape on the question of the extent of the weaving. Guy Binette, slip op. at 5. Thus, upon *de novo* review, see supra n.1, the court discounted the officer's statements. See Guy Binette, slip op. at 5.

the defendant's actions as "driving all over that one lane," a comment we construed to be synonymous with weaving excessively. Id., slip op. at 8. Furthermore, we contrasted erratic driving, which gives rise to reasonable suspicion for a traffic stop, with mere "inattention to detail and imperfection," which does not. Id., slip op. at 9.

Finally, although not a "weaving within the lane" case, consideration of State v. Smith, 21 S.W.3d 251 (Tenn. Crim. App. 1999) is profitable. In that case, this court reversed the trial court's determination of reasonable suspicion based upon specific and articulable facts where a state trooper stopped the defendant's vehicle after observing the vehicle twice change lanes while passing other vehicles without signaling and driving on the white line near the edge of the roadway. Id. at 258. The court first rejected the lane changes as supporting reasonable suspicion because the evidence did not support a violation of the traffic laws. Id. at 257. In considering whether driving on the white line supported a finding of reasonable suspicion, the court contrasted prior decisions in which there had been evidence of "erratic driving or weaving while driving" and held that reasonable suspicion could not be supported absent evidence the defendant "was driving erratically, weaving, or otherwise causing a hazard to other vehicles." Id. at 258. The evidence of Defendant Smith's driving did not meet that test. Accordingly, the stop violated constitutional principles.

In the present case, the defendant was described as "cutting a 'z' continuously" from the dotted center line to the shoulder fog line during the entire two to three-tenths of a mile that the arresting officer observed him. Although confined to one lane, the defendant's driving was erratic, and it appeared as if he was negotiating a slalom course. The officer saw nothing in the roadway or about the defendant's vehicle which might explain the unusual course taken. These facts, which were uncontroverted at the suppression hearing, essentially constitute the "totality of the circumstances" to be considered in this case. See Guy Binette, slip op. at 5. The officer's testimony supports a conclusion that the defendant's driving was unusual, volatile and hazardous. In other words, it was the type of erratic and pronounced driving which forms the basis for reasonable suspicion for a traffic stop. See id., slip op. at 6; Smith, 21 S.W.3d at 258; Don Palmer Black, slip op. at 9.

For this reason, we conclude that the trial court correctly denied the defendant's motion to suppress. The judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE