JERSEY MINIERE ZINC COMPANY,
Plaintiff–Appellant,

v.

Donald W. JACKSON,
Commissioner of Revenue.

ASARCO INCORPORATED,
Plaintiff–Appellant,

v.

Donald W. JACKSON, Commissioner of
Revenue, Defendant–Appellee.

Supreme Court of Tennessee,
at Nashville.

July 31, 1989.

Christopher M. Was, Trabue, Sturdivant & DeWitt, Nashville, for plaintiffs-appellants.

Charles W. Burson, Atty. Gen. & Reporter and Daryl J. Brand, Asst. Atty. Gen., Nashville, for defendant-appellee.

OPINION

DROWOTA, Chief Justice.

I.

In these consolidated cases, Plaintiffs seek refunds for sales taxes paid under protest for the tax years 1981–83. The taxpayers contend that they are entitled to the exemptions for industrial materials

used and consumed directly in the manufacturing process, T.C.A. § 67–6–102(13)(E), and to the reduced sales and use tax for industrial machinery in effect in the tax years in question, T.C.A. § 67–6–206. After a 1984 audit, Commissioner assessed taxpayers the full rate for sales and use tax. The taxpayers paid the taxes under protest and brought suit. All parties moved for summary judgment. The Chancellor held for the Commissioner and dismissed the taxpayers' claims. We now reverse.

The facts were largely stipulated and are not in dispute. Plaintiffs ASARCO and Jersey Miniere are engaged in underground zinc mining operations. Plaintiff ASARCO is also engaged in surface stone quarry operations. In order to extract zinc ore embedded in underground rock formations, underground horizontal tunnels leading to ore deposits are built leading out from the vertical mine shaft. The ore deposits are located and production mining occurs at the end of these tunnels (the "working faces"). Underground jumbo drills are used to drill blast holes in the rock formations at the working faces. Explosives are loaded into the blast holes by blast crews using explosive loading vehicles. The explosives are detonated and the ore extracted. In addition to the zinc produced by this process, the rock by-product is also processed and sold either as crushed stone for highway construction or finely ground agricultural limestone.

In ASARCO's surface stone quarry operations, blast holes are drilled into the rock formation. Explosives are loaded into these holes and detonated to dislodge the stone. The stone is sometimes sold as is without further processing. In other cases, the dislodged stone is crushed into smaller sizes for sale as gravel, sand and other products.

The only items in dispute are those used where the blasting occurs, but prior to the detonation of explosives. These fall into two categories corresponding to the two exemptions which plaintiffs contend are applicable.

The first group of items consists of materials such as drill bits, blasting wire, etc., which are utilized directly on the rock formations in preparation for blasting. (Group 1 items). The second group of items is machinery, such as drills and explosive loading vehicles, which are directly used on the rock formations in preparation for blasting. (Group 2 items).

## II.

The Legislature has imposed a tax on the "sale at retail" and "use" of tangible personal property in this state. T.C.A. §§ 67–6–101 *et seq.* In defining a "sale of retail" or "use," the legislature exempted certain industrial material used in the future processing, manufacturing, or conversion into finished articles. T.C.A. § 67–6–102(13)(E) states:

> "Sale at retail," "use," "storage," and "consumption" shall not include the sale, use, storage or consumption of industrial materials and explosives for future processing, manufacture or conversion into articles of tangible personal property for resale where such industrial materials and explosives become a component part of the finished product or are used directly in fabricating, dislodging, sizing, converting, or processing such materials or parts thereof....

This language is carried over from a substantially similar provision in the original sales tax act. See Public Acts of 1947, ch. 3, § 2(c)(2). Plaintiffs contend that the Group 1 items are exempt under this statute.

For the tax years 1981–83, industrial machinery was defined as follows:

> Machinery, including repair parts and any necessary repair or taxable installation labor therefor, which is directly and primarily utilized in fabricating or processing tangible personal property for resale....

T.C.A. § 67–6–102(8)(A). Industrial machinery was subject to a reduced rate of taxation from 1981 to 1983. Since July 1, 1983, it has been wholly exempt from sales and use tax. T.C.A. § 67–6–206(a). The act originally providing for separate treat-

ment of industrial machinery was passed in 1963. See Public Acts of 1963, ch. 172. Plaintiffs contend that § 67–6–102(8)(A) exempts Group 2 items.

We have previously held that both § 67–6–102(13) and § 67–6–206 are exemption statutes and thus must be construed strictly against the taxpayer with the taxpayer bearing the burden of proving entitlement to the exemption. *See Woods v. General Oils, Inc.*, 558 S.W.2d 433 (Tenn. 1977) (§ 67–6–206) and *Phillips & Buttorff Mfg. v. Carson*, 188 Tenn. 132, 217 S.W.2d 1 (1949) (§ 67–6–102(13)(E)).

Although we have before us two distinct statutory exemption provisions with separate historical derivations, the language at issue in both statutes is similar, if not quite identical. Neither side suggests that the slight differences in the key wording of the two statutes bears on the resolution of the issue before the Court.

■ The Commissioner first argues that because the machinery and materials are used prior to blasting, their use is not part of the actual production process. Rather, their use is preliminary to production and thus not exempt under our decision in *Shearin v. Woods*, 597 S.W.2d 895 (Tenn. 1980).

In *Shearin*, the taxpayer operated a sand mine. After a site was cleared of trees, shrubs and debris, a backhoe would be brought in to excavate and sort "muck," described as sandy dirt or dirty sand. The excavated material was sorted and sold.

The taxpayer claimed the backhoe was exempt industrial machinery under § 67–6–102(8). The Commissioner argued that this use of the backhoe constituted site preparation, not direct use in the mining process, and that it was similar to the removal of overburden from a seam of coal in order to get to the product to be mined. We recognized as relevant for exemption purposes a distinction between site preparation, and the mining process itself, but held that the use of the backhoe fell into the latter category since it was used directly to remove the product to be sold.

In the case before us, the proof shows that the machinery and materials in question are used as part of an integrated process of drilling, blasting and removal of the ore. Holes are drilled and loaded with explosives on a continuous basis. Blasting takes place at the end of each shift. The items at issue operate directly on the objects or minerals to be mined. Their proximate purpose is the severence of the mineral from the ground. We have no difficulty in distinguishing this use from a more remote activity such as site preparation by removal of overburden.

■ The Commissioner's primary argument is that the act of processing or fabrication does not begin for purposes of the exemption statutes until there is tangible personal property to be fabricated or processed. Under the present set of facts, until the minerals are actually severed from the ground by blasting, they are properly classified as realty rather than as tangible personal property. *See Stein Construction Co. v. King*, 643 S.W.2d 329 (Tenn.1982) (Unexcavated dirt is real property until it is severed when it becomes tangible personal property subject to the use tax). Since the items in question are used prior to blasting and severance, that is, while the minerals are still realty, the Commissioner contends that they are not used in processing or manufacturing tangible personal property.

■ The words of a statute should be taken in their ordinary sense without any forced or subtle construction. *Bowater North American Corporation v. Jackson*, 685 S.W.2d 637, 639 (Tenn.1985). In our opinion, the natural and ordinary meaning of the words used in the statutes do not support the Commissioner's interpretation. Section 67–6–102(13)(E) exempts industrial materials used in "processing, manufacturing or conversion *into* articles of tangible personal property *for resale*." [Emphasis supplied]. That is, it requires only that the end product of the activity of processing, manufacturing or conversion be tangible personal property. Section 67–6–102(8) exempting machinery used in "fabricating or processing tangible personal property *for*

*resale"* [emphasis supplied], similarly focuses on the character of the resulting product. In both statutes, the "tangible personal property" requirement is a limitation only on the end product which results from processing or manufacturing.

This interpretation is supported by our decision in *Shearin v. Woods, supra.* The Commissioner in *Shearin v. Woods* did not press, and we did not expressly address, the distinction now asserted between realty and personalty. But under the facts that were before us, we upheld the exemption on industrial machinery whose use in the industrial process began when the material being mined was real property. This result is inconsistent with the theory now asserted by the Commissioner and we decline to overrule it.[1]

■ Finally, the Commissioner argues that the drilling equipment and related items which were used by Plaintiff ASARCO to remove overburden at its surface stone mines, do not qualify for the exemption under *Shearin.* On some occasions, overburden had to be removed to gain access to the usable stone, and sometimes drilling and blasting were used in the removal of the overburden. The uncontradicted proof is that this use of ASARCO's drilling equipment was very limited.

In order to qualify for the industrial machinery exemption, the item must be used "primarily" in the exempted activity. Plaintiff ASARCO met its burden on this account; the use of the items to remove overburden was only secondary and occasional and was insufficient to deny ASARCO the exemption. *See Woods v. General Oils, Inc.,* 558 S.W.2d 433, 436 (Tenn.1977).

The judgment of the Chancellor is reversed. The Plaintiffs' motions for summary judgment are granted. The costs are taxed to the Commissioner. These cases are remanded for entry of any necessary

orders and for such other proceedings as are necessary.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.

---

1. It might be argued that the backhoe in *Shearin* was exempt because it was also used on property which had been severed and become tangible personal property. By contrast, the industrial machinery and materials in the case before us were only used prior to severance. But assuming the Commissioner's distinction between real and personal property, the taxpayer in *Shearin* failed to meet its burden of proving that the backhoe was "primarily" used on personal property. Under the facts in *Shearin,* the use of the backhoe on realty was an equal, if not dominant use.