NUCLEAR FUEL SERVICES,
INC., Plaintiff–Appellee,

v.

Joe HUDDLESTON, Commissioner of
Revenue, State of Tennessee,
Defendant–Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 19, 1995.

Application for Permission to Appeal
Denied by Supreme Court
April 29, 1996.

Charles W. Burson, Attorney General and Reporter and Sean P. Scally, Assistant Attorney General, for appellant.

Marshall H. Peterson of Mason & Peterson, Knoxville, Stephen E. Fox of McKinnon, Fowler, Fox & Taylor, Johnson City, for appellee.

SUSANO, Judge.

In this sales tax case, Nuclear Fuel Services, Inc. (NFS), seeks a refund of taxes paid by it for the tax years 1989, 1990, and part of 1991. NFS contends that its purchases of certain decommissioning and volume reduction equipment are exempt from sales tax. NFS claims the equipment is "industrial machinery," and thus exempt from sales and use tax under T.C.A. § 67–6–206(a). The trial court granted NFS summary judgment, and the Commissioner of Revenue (Commissioner) appealed. The only question on appeal is whether the equipment at issue falls within the statutory definition of "industrial machinery." We hold it does not.

I

NFS manufactures and sells nuclear fuel. Between 1965 and 1972, NFS utilized its plutonium facility in Erwin, Tennessee, to manufacture plutonium pellets for fuel rods in nuclear reactors. In 1972, NFS's contract to supply nuclear fuel expired and NFS consequently ceased production of the pellets.

As an anticipated consequence of the manufacturing process, the equipment and facilities used by NFS to produce the fuel pellets became contaminated with toxic radioactivity. In the late 1980's, NFS began purchasing the decommissioning and volume reduction equipment ("DVR equipment") at issue in this case. It did not pay sales tax on those purchases. NFS used the DVR equipment in a dual capacity. Initially, it used it to

"decommission" the contaminated materials by measuring their level of radioactivity and by spraying them with a high-pressure water jet in an attempt to decontaminate them as much as possible. Then, after lowering the contamination level, NFS used another piece of DVR equipment, called a shear baler, to cut the materials into pieces and compress them into sixteen-inch cubes so as to minimize their volume for burial. The DVR equipment was purchased in accordance with NFS's decontamination and decommissioning plan, the existence of which was essential to the renewal of the operating license issued to NFS by the federal Nuclear Regulatory Commission (NRC).

In 1992, the Commissioner conducted an audit of NFS, which resulted in a tax deficiency assessment of $123,791, representing the tax liability on the DVR equipment purchases plus interest. NFS paid the tax and interest on June 18, 1992, and then filed suit to recover its payment, contending entitlement to the "industrial machinery" exemption of T.C.A. § 67–6–206(a).

## II

█ The material facts in this case are not disputed. The only question on appeal is one of law, and therefore we review the trial court's decision *de novo*, with no presumption of correctness. *Presley v. Bennett,* 860 S.W.2d 857, 859–60 (Tenn.1993).

█ Both of the statutes at issue, § 67–6–102(12) and § 67–6–206(a), are tax exemption statutes and as such "must be construed strictly against the taxpayer with the taxpayer bearing the burden of proving entitlement to the exemption." *Jersey Miniere Zinc Co. v. Jackson,* 774 S.W.2d 928, 930 (Tenn.1989), *Shearin v. Woods,* 597 S.W.2d 895, 896 (Tenn.1980). Specifically, NFS "has the burden of establishing that [its] equipment or machinery meets the requirements of the statutory definition." *Shearin,* 597 S.W.2d at 896. As the Supreme Court stated in *Woods v. General Oils, Inc.,* 558 S.W.2d 433, 435 (Tenn.1977),

> in a suit against the state by a taxpayer claiming an exemption from taxation the burden is on the taxpayer to establish his exemption; every presumption is against it

and a well-founded doubt is fatal to the claim.

## III

█ The exemption to which NFS claims entitlement is found at T.C.A. § 67–6–206(a), which states that "[a]fter June 30, 1983, no tax is due with respect to industrial machinery." "Industrial machinery" is defined extensively at T.C.A. § 67–6–102(12). Subsection (A) of that section reads, in relevant part, as follows:

> "Industrial machinery" means: (A) Machinery, apparatus and equipment..... which is necessary to, and primarily for the fabrication or processing of tangible personal property for resale and consumption off the premises, or pollution control facilities primarily used for air pollution control or water pollution control, where the use of such machinery, equipment or facilities is by one who engages in such fabrication or processing as one's principal business ...

The definition is further refined at subsection (F) of T.C.A. § 67–6–102(12):

> Such industrial machinery necessary to and primarily for the fabrication or processing of tangible personal property for resale and consumption off the premises or used primarily for the control of air pollution or water pollution *does not include machinery, apparatus and equipment used prior to or after equipment exempted by subdivision (12)(D)(ii)* ...

(Emphasis added). Subdivision (12)(D)(ii) provides:

> Such industrial machinery necessary to and primarily for the fabrication and processing of tangible personal property for resale or used primarily for the control of air pollution or water pollution includes, but is not limited to:

> \*     \*     \*     \*     \*     \*

> Equipment used in transporting raw materials from storage to the manufacturing process, and transporting finished goods from the end of the manufacturing process to storage;

Sorting through the definitional sections, the critical issue is whether the DVR equipment is "equipment used prior to or after,"[1] "[e]quipment used in transporting raw materials from storage to the manufacturing process, and transporting finished goods from the end of the manufacturing process to storage."[2]

NFS argues that a strictly literal construction of the statutory language is inappropriate as leading to an absurd result. We agree. If the words "equipment used prior to"[3] apply to "equipment ... used in transporting finished goods from the end of the manufacturing process to storage,"[4] then no equipment used before the very end of the manufacturing process could be exempt as "industrial machinery." Conversely, if "equipment used ... after" applies to "equipment used in transporting raw materials from storage to the manufacturing process," then no exemption can be claimed for equipment used after the very start of the process, and the whole of subsection (F) is rendered nonsensical. Keeping in mind the Supreme Court's admonition that

> [t]he primary rule of statutory construction, more important and compelling than all others, is that the law be rendered intelligible and absurdities avoided,

*Roberts v. Cahill Forge & Foundry Co.*, 181 Tenn. 688, 184 S.W.2d 29, 31 (1944), we decline a strictly literal construction of the statutory language.

In construing these provisions we are mindful of the well-settled principle of statutory construction that

> [i]n interpreting [a statute] the legislative intent must be determined from the plain language it contains, read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning.

*National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn.1991). In our opinion, the most natural and nonconstrained reading of the statute's language suggests that the General Assembly intended that the words "prior to" would modify only the phrase "[e]quipment used in transporting raw materials from storage to the manufacturing process," and that the word "after" would modify only "[e]quipment used in ... transporting finished goods from the end of the manufacturing process to storage." The effect of this construction is that "industrial machinery" includes only machinery, apparatus and equipment used during the manufacturing process, and not before raw materials are brought in to start the process, nor after the completed product has been shipped away from the manufacturing site. This is the interpretation urged by the Commissioner, and we think it is what the legislature intended.

Applying this construction to the facts of the case at bar, it is apparent that NFS cannot claim the "industrial machinery" exemption for the purchases of the DVR equipment because it is undisputed that the purchases were not made, nor the DVR equipment used, until the latter 1980's. This is approximately sixteen years after the manufactured products, the plutonium fuel pellets, were last finished and delivered to NFS's customers.

NFS ably and convincingly argues that the purchase and use of the DVR equipment is an essential and integral element of the manufacturing process itself, because it could not operate its plant without a license, and the NRC required a decommissioning and disposal plan as a condition of the license renewal, which in turn required the DVR equipment. However, under the statute, it is not enough that the equipment be an essen-

---

1. T.C.A. § 67–6–102(12)(F).

2. T.C.A. § 67–6–102(12)(D)(ii). Much of the parties' briefs is devoted to presenting opposing views on whether the DVR equipment qualifies as "machinery, apparatus [or] equipment ... which is necessary to, and primarily for the fabrication or processing of tangible personal property ... or pollution control facilities primarily used for air pollution control or water

pollution control." T.C.A. § 67–6–102(12)(A). An analysis of whether the DVR equipment falls within one or both of those definitions is moot, since, even assuming *arguendo* that it does, it still must comport with the definitional requirement of T.C.A. § 67–6–102(12)(F).

3. T.C.A. § 67–6–102(12)(F).

4. T.C.A. § 67–6–102(12)(D)(ii).

tial part of the manufacturing process; the legislature, in enacting T.C.A. § 67–6–102(12)(F), further imposed a temporal requirement. That temporal requirement—that the equipment be used during the manufacturing process—was not met by NFS in this case.

For the aforementioned reasons, the judgment of the trial court is reversed, and NFS's complaint is hereby dismissed at its cost. This case is remanded for the collection of costs below. Costs on appeal are taxed and assessed to the Appellee.

GODDARD, P.J., and McMURRAY, J., concur.