## FREEDOM BROADCASTING OF TN, INC., et al.

v.

## TENNESSEE DEPARTMENT OF REVENUE.

Court of Appeals of Tennessee, at Nashville.

Jan. 8, 2002.

Application for Permission to Appeal Denied by Supreme Court June 24, 2002.

---

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor Gen-

eral and Margaret M. Huff, Assistant Attorney General, for the Appellant, Tennessee Department of Revenue.

Larry D. Crabtree, Douglas R. Pierce, and R. Christopher Lowe, Nashville, Tennessee, for the appellees, Freedom Broadcasting of TN, Inc. and Holston Valley Broadcasting Corp.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Taxpayers petitioned the Tennessee Department of Revenue seeking an industrial machinery exemption from taxes on certain broadcasting equipment pursuant to section 67–6–206 of the Tennessee Code. After the administrative law judge concluded that Taxpayers provided a service and were not in the business of producing tangible personal property, the Department issued a final denial of Taxpayers' applications. The Taxpayers appealed that decision to the chancery court which reversed the administrative law judge's decision and held that Taxpayers were entitled to the industrial machinery exemption. The Department appeals. For the reasons set forth below, we affirm the decision of the chancery court.

This case stems from the Tennessee Department of Revenue's denial of two applications for Industrial Machinery Authorization. Freedom Broadcasting of Tennessee and Holston Valley Broadcasting Corporation (individually, "Freedom" and "Holston;" collectively, "Taxpayers") sought exemption from taxes for certain equipment pursuant to section 67–6–206 of the Tennessee Code which states that "[a]fter June 30, 1983, no tax is due with respect to industrial machinery." In their application, Taxpayers asserted that their equipment [1] met the definition of industrial machinery as stated at section 67–6–102(13)(A) of the Tennessee Code. The Department denied each application on the grounds that Taxpayers provide a telecommunications service and do not manufacture or process tangible personal property.

Following the Department's denial of the industrial machinery application, Taxpayers received a hearing before an Administrative Law Judge (ALJ). The ALJ issued findings of fact which are undisputed in this appeal. As to Holston, the ALJ made the following determinations. Holston operates television and radio stations and is in the business of broadcasting radio and television transmissions for public consumption. Holston receives a portion of its television and radio broadcast programming from various outside sources and produces some original programming either in the studio or in the field. Characteristics of Holston's broadcast signal can be measured, including its amplitude, frequency, band width, degree of modulation and transmitter output. Members of the general public may utilize the programming without charge, providing they have a radio or television to receive the broadcast signal. In addition to broadcasting, Holston sells advertising time on its broadcast transmissions. Representatives of Holston sell advertising time during certain programming. Holston purchases and produces the programming at significant costs; the purchase of the programming usually involves the purchase of the right to broadcast a certain program, during a specified time period, and for a specified number of times. Holston sets its advertising rates based upon the quali-

1. Taxpayers each listed similar equipment as qualifying for the exemption, including receiv-

ers, controllers, field recorders, decoders, transmitters, towers, and transmission lines.

ty of programming during which the advertising is to be aired, the cost of the programing, the audience that the program produces and the strength of the particular station. The advertising customers purchase the privilege of having their advertising broadcast at a particular time, during a particular program. The majority of Holston's gross sales are derived from selling advertising time on its broadcast transmissions. Holston does not collect sales tax on any of its broadcast advertising, nor does Holston pay sales tax on any of its purchases of programming.

The ALJ made similar findings with regard to Freedom Broadcasting of Tennessee. Freedom Broadcasting operates a full service television station and broadcasts television transmissions for public consumption. Freedom Broadcasting receives most of its programming via satellite and originates the remainder in its studio or in the field. Characteristics of the broadcast signal can be measured, including the output power of the transmitter and the frequency. Members of the general public, provided that they have a television to receive the broadcast signal, may view the programming without charge. In addition to broadcasting television transmissions, Freedom Broadcasting sells advertising time on its transmissions. Freedom Broadcasting purchases and produces programming at significant costs in order to sell advertising during its broadcasts. The purchase of the programming involves the right to broadcast a certain program, during a specified time period, and for a specified number of times. The advertising rates are based upon the quality of programming during which the advertisement is to be aired, the cost of the programming, the audience that the program produces, and the demand on inventory. The advertising customers purchase the privilege of having their advertising broadcast at a particular time, during a

particular program. Most of Freedom Broadcasting's gross sales come from sales of advertising time on its television broadcasting signal. Freedom Broadcasting does not collect sales tax on any of its sales of broadcast advertising, nor does it pay sales tax on any of its purchases of programming.

After listing its findings of fact, the ALJ made conclusions of law regarding each taxpayer. The ALJ determined that the Department correctly denied Taxpayers' applications. The ALJ concluded that Taxpayers were a service and that Taxpayers did not process or fabricate tangible personal property for resale off the premises. Pursuant to the ALJ's decision, the Department issued final orders affirming the denial of Taxpayer's applications.

Taxpayers sought and received review of the Department's decision by the chancery court. The chancery court consolidated the two cases and heard oral argument on the issue. In making its decision, the court adopted the ALJ's findings of fact. The court, however, did not agree with the ALJ's conclusions of law. The court determined that the ALJ's decision was arbitrary and capricious, and accordingly, reversed the Department's decision to deny the industrial machinery application of each taxpayer. The Department appeals the decision of the chancery court. The central issue on appeal is whether the ALJ properly denied Taxpayers' applications for Industrial Machinery Authorization.

■■■ Our review, as well as the chancery court's review of the ALJ's decision, is governed by the Administrative Procedures Act. *Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 809 (Tenn.1995); *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 491 (Tenn.Ct.App.1999). Section 4–5–

322(h) of the Tennessee Code states the following:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The "substantial and material" evidence standard requires a "searching and careful inquiry that subjects the agency's decision to close scrutiny." *Sanifill*, 907 S.W.2d at 810 (citing *Wayne County v. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn.Ct.App.1988)). "Substantial and material" evidence is generally understood to require "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Gluck*, 15 S.W.3d at 490 (quoting *Wayne County*, 756 S.W.2d at 280). Finally, the evidence "must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Id.* (citing *Pace v. Garbage Disposal Dist.*, 54 Tenn.App. 263, 390 S.W.2d 461, 463 (1965)).

■ Findings of fact made by the agency are not reviewed *de novo*; our review is limited to the record of the case. Tenn. Code Ann. § 4–5–322(g); *Sanifill*, 907 S.W.2d at 810. Construction of a statute and the application of the law to the facts, however, is a question of law that may be addressed by the courts. *Sanifill*, 907 S.W.2d at 810.

Under the scope of review provided by the Administrative Procedures Act, we find that the chancery court correctly reversed the ALJ's decision to deny Taxpayers' applications for Industrial Machinery Authorization. The ALJ arbitrarily ignored factual findings and erred in the application of the law to the facts. Additionally, it was an abuse of discretion for the ALJ to consult sections of the Tennessee Code that were irrelevant in determining whether Taxpayers qualified for Industrial Machinery Authorization.

■ We begin our discussion of the industrial machinery exemption with the well-established rule that tax exemption statutes "must be construed strictly against the taxpayer with the taxpayer bearing the burden of proving entitlement to the exemption." *Jersey Miniere Zinc Co. v. Jackson*, 774 S.W.2d 928, 930 (Tenn. 1989). Any well-founded doubt will defeat an asserted exemption from taxation. *Nashville Clubhouse Inn v. Johnson*, 27 S.W.3d 542, 544 (Tenn.Ct.App.2000). Further, in construing a tax statute, we must give effect to the legislative intent, which is best determined from the words used in the statute. *Carr v. Chrysler Credit Corp.*, 541 S.W.2d 152, 156 (Tenn.1976). We must take the words and language used by the General Assembly in their natural and ordinary sense, read in the context of the entire statute, without any forced or subtle construction. *Eusco, Inc.*

*v. Huddleston*, 835 S.W.2d 576, 581 (Tenn. 1992); *Nuclear Fuel Services, Inc. v. Huddleston*, 920 S.W.2d 659, 662 (Tenn.Ct.App. 1995).

In order for Taxpayers to take advantage of the industrial machinery exemption, Taxpayers must meet the definition of industrial machinery. The General Assembly provides us with the following definition for industrial machinery.

> Machinery, apparatus and equipment with all associated parts, appurtenances and accessories, ... [must be] necessary to, and primarily for, the fabrication or processing of tangible personal property for resale and consumption off the premises ... where the use of such machinery [or] equipment ... is by one who engages in such fabrication or processing as one's principal business....

Tenn Code Ann. 67–6–102(13)(A)(Supp.2001). Accordingly, for the industrial machinery exemption to apply in the present case, the parties agree that the equipment must be used (1) primarily to fabricate or process [2] tangible personal property (2) for resale and ultimate consumption off the premises of Taxpayers, and (3) the fabricating or processing of the tangible personal property must be Taxpayers' principal business.

 The first argument by the Department is that the Taxpayers' end product is not tangible personal property. Rather, the Department contends that the Taxpayers provide free service to the general public. To support their argument, the Department relies on various sections of the Tennessee Code. Section 67–6–102(24)(F)(iii) of the Tennessee Code states that a "retail sale" includes "[t]he furnishing, for a consideration, of either intrastate or interstate telecommunication

services." Telecommunications include "transmission by or through any media, such as wires, cables, microwaves, radio waves, light waves, or any combination of those or similar media." Tenn.Code Ann. § 67–6–102(30)(B)(Supp.2001). Finally, the definition of telecommunications does not include "television or radio programs which are broadcast over the airwaves for public consumption." Tenn.Code Ann. § 67–6–102(30)(D)(Supp.2001).

The Department insists, and the ALJ concluded, that these code sections are relevant to determine that the General Assembly considers the output of radio and television broadcasting signals to be a service, not the fabrication or processing of tangible personal property. The Department maintains that these sections illustrate that the legislature deemed the output of broadcast signals to be a service, and these sections function to exempt the service from tax. We are unable to share this interpretation with the Department. Taxpayers' television and radio programming that are carried on Taxpayers' broadcast signals are expressly excluded in section 67–6–120(30)(D) from the definition of telecommunications. The signals are not "telecommunications" as defined in section 67–6–120(30)(B) and, therefore, cannot be "telecommunication services" under 67–6–120(24)(F)(iii). No language exists within these sections to lead one to the conclusion that the legislature considered the output of broadcast signals to be a service, and utilized these sections to exempt that "service" from taxation. The sections only lead to the conclusion that the output of broadcast signals is not a "telecommunication service."

---

**2.** The parties do not dispute that the equipment is used primarily to fabricate or process the broadcast signal.

It follows, then, that these sections are irrelevant to the determination of whether Taxpayers equipment fabricates or processes "tangible personal property." We fail to see how the legislature in enacting these statutes foreclosed any finding that broadcasting signals were tangible personal property. We do not believe that the General Assembly intended to broadly declare that broadcasters were engaging in a service and not producing tangible personal property. The language employed in the statutes suggests just the opposite. Therefore, these sections fail to support the Department's assertion that the output of broadcast signals is a service. The ALJ's decision to consult these sections in order to determine whether Taxpayers fabricated or processed tangible personal property constituted an unwarranted exercise of discretion.

■ We believe that the proper method to determine whether Taxpayers' broadcast signals are tangible personal property is to consult the definition of tangible personal property as enacted by the Tennessee General Assembly and its corresponding interpretation by the courts. Section 67–6–102(29) of the Tennessee Code defines tangible personal property as "personal property, which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses." This definition of tangible personal property must be utilized when examining the definition of industrial machinery found in section 67–6–102(13) of the Tennessee Code.

Our supreme court examined the General Assembly's definition of tangible personal property when deciding whether electricity came within the definition. *Texas E. Transmission Corp. v. Benson,* 480 S.W.2d 905, 908 (Tenn.1972). The court stated that electricity is included in this definition because electricity "can be mea-sured and/or felt." *Id.* Additionally, the supreme court has stated that our focus must be on the resulting product when considering the industrial machinery exemption. *Jersey Miniere Zinc Co. v. Jackson,* 774 S.W.2d 928, 930–31 (Tenn. 1989). The court determined that the tangible personal property referenced in the definition of industrial machinery must be the end product that results from the fabricating or processing. *Id.* at 931.

■ In the present case, the ALJ found that characteristics of Taxpayers' signals can be measured. These characteristics included the frequency, transmitter output, and amplitude of the broadcast signals. Further, the ALJ found that the programming carried on the broadcast signals can be viewed and heard by the general public, providing one has the appropriate device. Therefore, the broadcast signals are "in any other manner perceptible to the senses." Because the signals are capable of measurement and perceptible to the senses, the broadcast signals, like electricity, meet the definition of tangible personal property. In ignoring factual findings that clearly illustrated the broadcast signal was capable of measurement and perceptible to the senses, it was an abuse of discretion for the ALJ to determine that the broadcast signal failed to meet the definition of "tangible personal property."

The broadcast signals also constitute Taxpayers' end product. The ALJ found that Taxpayers broadcast signals for public consumption. When the broadcast signals leave Taxpayers' possession, the signals contain all of the information and the programming that the public consumes. Taxpayers do not further process the signals after the signals leave Taxpayers' possession; thus, the signals are Taxpayers' sole and end product. Therefore, according to the General Assembly's definition of

tangible personal property, our supreme court's prior decisions, and the ALJ's findings of fact, we conclude that Taxpayers' broadcast signals constitute tangible personal property as the phrase is used in the definition of industrial machinery.

 Next, the Department argues that Taxpayers do not fabricate or process the broadcast signals for "resale" as required by section 67–6–102(13)(A) of the Tennessee Code. The Department asserts that no one pays consideration to the Taxpayers for their broadcast signals; the advertisers only pay for advertising time. Additionally, because advertising time is intangible, the Department contends that a sale, as defined by the Tennessee Code, has not occurred.

 Section 67–6–102(25)(A) of the Tennessee Code defines a sale as "any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration. . . ." Accordingly, three elements are necessary to constitute a sale: "(1) the transfer of title or possession or both, (2) of tangible personal property, and (3) for a consideration." *Nashville Clubhouse Inn v. Johnson*, 27 S.W.3d 542, 544–45 (Tenn.Ct.App.2000) (citing *Mast Advertising & Publ'g, Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn.1993); *Volunteer Val-Pak v. Celauro*, 767 S.W.2d 635, 636 (Tenn.1989)).

In this case, Taxpayers have illustrated that they fabricate or process the broadcast signals for resale as mandated by the Tennessee Code. First, as we stated above, Taxpayers' broadcast signals meet the statutory definition of tangible personal property. Second, advertisers take temporary possession of the broadcast signals when the advertisement is broadcast to the public. Finally, the advertisers pay Taxpayers in order to temporarily possess the broadcast signal, constituting the required consideration. Accordingly, Taxpayers have illustrated the requirements to establish a sale under our statutory and case law.

We find the Department's argument that advertising time is an intangible to be without merit. Though the ALJ found that Taxpayers sell advertising "time" to the advertisers, the "time" sold is actually a segment of the broadcast signal. The Taxpayers are selling a portion of the tangible personal property to advertisers for a certain period. Without the broadcast signal, there would be no advertising time to sell the advertisers. Therefore, we are unpersuaded by the Department's argument and conclude that advertisers are purchasing tangible personal property from the Taxpayers—broadcast signals.

Additionally, we are unpersuaded by the Department's contention that no transfer of possession has occurred in this transaction. The General Assembly has clearly defined the transfer of possession to encompass the transaction in the present case. By permitting advertisers to place advertisements on their signal, Taxpayers transfer possession of the signal to the advertisers. This satisfies the legislative requirement of "any transfer" of possession "in any manner or by any means whatsoever of tangible personal property." Tenn.Code Ann. § 67–6–102(25)(A)(Supp.2001).

 Finally, the Department asserts that selling broadcast signals is not Taxpayers' principal business as required in the definition of industrial machinery. The Department employs the fifty-one percent test to determine a taxpayer's principal business. *See Tennessee Farmers' Co-op. v. State*, 736 S.W.2d 87, 91–92 (Tenn. 1987) (recognizing and approving of the Department of Revenue's use of the fifty-

one percent test). Under the fifty-one percent test, the Department examines the taxpayer's gross sales receipts to determine whether a majority of the taxpayer's revenues are from fabricating or processing tangible personal property. *Id.* at 88–89.

The Department contends that Taxpayers do not sell the signals to viewers or listeners. Further, the Department asserts that Taxpayers do not sell the signals to advertisers. Instead, the Department maintains that Taxpayers only sell time to advertisers. Therefore, according to the Department, Taxpayers do not sell anything they have fabricated or processed as required by statute, rather, the Taxpayers' principal business is selling advertising time.

We disagree with the Department. As the ALJ found, the majority of Taxpayers' gross sales result from selling advertising time on Taxpayers' broadcast signals. The Taxpayers use the equipment and machinery to fabricate and process the broadcast signals, which are tangible personal property. Finally, as we stated above, the sale of time on the broadcast signal is a sale of a portion of the broadcast signal to the advertisers. Without the sale of this signal, Taxpayers would receive substantially less gross revenue, and likely, would be unable to maintain their business. Accordingly, we conclude that Taxpayers' principal business is the sale of broadcast signals that are fabricated and processed by Taxpayers' machinery and equipment.

In conclusion, we hold that Taxpayers' machinery and equipment qualifies as "industrial machinery" as defined in the Tennessee Code. Taxpayers have demonstrated that they use the machinery and equipment to fabricate and process tangible personal property for resale and ultimate use or consumption off Taxpayers' premises. Further, Taxpayers have

shown that the fabrication and processing of the broadcast signal is their principal business. The chancery court properly reversed the ALJ's decision to deny Taxpayers' application for Industrial Machinery Authorization.

Accordingly, we affirm the decision of the chancery court. The costs of this appeal are taxed to the appellant, the Tennessee Department of Revenue.