IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 18, 2007 Session

## CITY OF MEMPHIS v. THE CIVIL SERVICE COMMISSION OF THE CITY OF MEMPHIS and RICHARD LINDSEY

Direct Appeal from the Chancery Court for Shelby County
No. CH-05-1892-3     D. J. Alissandratos, Chancellor

No. W2006-01258-COA-R3-CV - Filed April 25, 2007

This appeal involves the termination of a police officer's employment with the Memphis Police Department. The officer appealed his termination to the Civil Service Commission of the City of Memphis ("the Commission"). The Commission found that the City of Memphis ("the City") had not shown that termination was reasonable, and it ordered that Officer Lindsey be reinstated with full back pay and benefits. The chancery court affirmed the Commission's decision. For the following reasons, we reverse and uphold the City's decision to terminate the officer.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Sara L. Hall, City Attorney; Carmalita Carletos-Drayton, Assistant City Attorney, for Appellant, City of Memphis

Deborah Godwin, Memphis, TN, for Appellee, Richard Lindsey

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Richard Brent Lindsey joined the Memphis Police Department in 1998. The incident which led to his termination occurred on February 7, 2003. While on routine patrol, Officer Lindsey would often drive by a certain dentist's office because of complaints that people were hanging out, partying, and drag racing on that street at night. At approximately 5:10 p.m., Officer Lindsey approached two vehicles parked in a cove near the dentist's office. A man and a woman – Mr. Mike Sossaman and Mrs. Jolie Tennant – were sitting in the front seat of one of the vehicles. Both were fully clothed and sitting on separate sides of the truck. Officer Lindsey asked Mr. Sossaman to step out of the truck,

patted him down, and placed him in the back of his patrol car. He requested identification from both individuals. Officer Lindsey then contacted the dispatcher to run their license plates and drivers' licenses. The dispatcher's tape reveals that Officer Lindsey was informed that both of the licenses were negative for warrants at 5:18 p.m.[1] However, Officer Lindsey continued to detain Mr. Sossaman and Mrs. Tennant because he claimed that when he had asked what they were doing there, "[t]heir stories didn't match."

Officer Lindsey's explanations of how their stories did not match have been inconsistent. According to Mrs. Tennant and Mr. Sossaman, they both explained to Officer Lindsey that they worked together at a nearby business and had just come to the area to sit and talk after work. In a statement given during a departmental investigation, Officer Lindsey claimed that Mr. Sossaman told him that they were just there talking, but Mrs. Tennant told him that they had come to the area to have sex. However, Officer Lindsey later denied making the statement about Mrs. Tennant saying they intended to have sex. Officer Lindsey then testified that their stories didn't match because Mr. Sossaman said they were just talking, and when Mrs. Tennant said the two worked together, he "might have jumped to the conclusion that" she meant they were there on business.

Mrs. Tennant claimed that after Officer Lindsey returned her driver's license, she asked if she was free to leave, but Officer Lindsey would not let her leave and threatened to arrest her for obstruction of justice if she did not get back in her car. She said that Officer Lindsey told her that he was waiting on his partner to arrive so that everything could get "straightened out."

Shortly thereafter, Mrs. Tennant's husband arrived on the scene with the couple's six-year-old daughter. Mr. Tennant began screaming at Mrs. Tennant and demanded an explanation from her and from Officer Lindsey. Officer Lindsey explained that he had found the two fully clothed and sitting on separate sides of the truck. Officer Lindsey then told the parties that they were free to leave. Mrs. Tennant claimed that Officer Lindsey told her "he was releasing [her] into [her] husband's custody for [her] criminal activity," but Officer Lindsey denied making the statement. The incident concluded at approximately 5:50 p.m.

At some point during the stop, Officer Lindsey had called Mrs. Tennant's husband from his own private cell phone and informed him of Mrs. Tennant's location.[2] The parties dispute how Officer Lindsey obtained Mr. Tennant's telephone number. Mrs. Tennant denied giving Officer Lindsey her telephone number and insisted that she had no idea how he obtained it, but she explained that it was listed in the telephone book under "Bobby and Jolie Tennant." Officer Lindsey claimed that he asked her for a phone number of "someone independent" who could verify their stories, and Mrs. Tennant voluntarily provided the phone number that he had called. He explained that he called

---

[1] Officer Lindsey was informed that Mrs. Tennant's vehicle was registered to Jolie and Robert Tennant.

[2] In a statement given during the police department's investigation, Officer Lindsey stated that he had run the tags and checked for warrants, and both reports had come back negative prior to his call to Mr. Tennant. Officer Lindsey later testified that he only continued to detain the individuals because he was waiting for the dispatcher to provide their license information, and the information came back either during the phone call or after the phone call.

the phone number and asked if the person answering knew Mrs. Tennant and knew why she would be parked in a cove at that particular location. Officer Lindsey said the person replied that he knew the location and would be right there. It is undisputed that Officer Lindsey did not inform Mrs. Tennant that the person he had called was on the way to the scene.

Following the incident, Mrs. Tenant's parents came to the police station and complained about Officer Lindsey's actions, indicating that they were afraid for their daughter because of her husband's violent tendencies. Mrs. Tennant subsequently filed a complaint with the Memphis Police Department because she felt that Officer Lindsey had harassed her and endangered her life in his handling of the incident. Following an investigation, Officer Lindsey was charged with violating two Departmental Regulations:

> DR 135 – Harassment: A member shall not abuse his/her authority or official position in order to embarrass, degrade, oppress, torment, sexually harass, discriminate predicated on gender, or persistently without due cause take action against any person to prevent that person from exercising lawful or constitutionally protected conduct and/or exercising the same. . . .

> DR 104 – Personal Conduct: The conduct of each member, both on and off duty, is expected to be such that it will not reflect adversely on other members, the Department, the City of Memphis, or the law enforcement profession. This regulation applies to both the professional and private conduct of all members. It prohibits any and all conduct which is contrary to the letter and spirit of departmental policy and procedure which would reflect adversely upon the Department or its members. It includes not only all unlawful acts of members but also acts which although not unlawful in themselves, would violate the Law Enforcement code of ethics, and would degrade or bring disrespect upon the member of the Department.

Deputy Chief Charles Cook conducted an administrative disciplinary hearing on the charges on November 11, 2003. Chief Cook determined that discipline was appropriate, but he referred Officer Lindsey to the psychological services division of the police department for an evaluation prior to rendering a decision on the proper discipline. Officer Lindsey was evaluated by a doctor, but Chief Cook retired before another hearing could be scheduled. Deputy Chief Larry Godwin took over the duties of Retired Chief Cook and held another hearing on February 2, 2004. After Officer Lindsey explained the details of the incident, Chief Godwin pointed out various ways that he had mishandled the situation. Chief Godwin then inquired about Officer Lindsey's previous encounters at that same location, and Officer Lindsey admitted that he had called another man's wife to the scene on a different occasion and that the man had been released to the custody of his wife when she arrived. Although Officer Lindsey's personnel "investigative file" contained information on the similar incident, Officer Lindsey had never been formally charged or confronted about the previous incident. However, Chief Godwin noted that Officer Lindsey did have several sustained

administrative charges, including previous violations of the Personal Conduct regulation.[3] Chief Godwin determined that the current charges against Officer Lindsey should be sustained, with a three-day suspension imposed for the Harassment charge and immediate termination for the Personal Conduct charge. Specifically, the hearing summary prepared by Chief Godwin contains the following statements:

> It is the opinion of this hearing officer and after careful review of all documentation contained in the investigative file Case #I033-03 that the charges of DR-135, Harassment and DR-104, Personal Conduct are sustained. Officer Lindsey had every right to investigate for what appeared to be suspicious persons in an area where numerous complaints, break-ins and suspicious activity, have occurred. However, once he identified the subjects and found them not to be engaged in any criminal activity, their identify verified, warrant checks through Station B verified negative, and by his own admission that he did not check any buildings for break-ins[,] neither party posed a threat to him, then they should have been released.

> Officer Lindsey took it upon himself to obtain phone numbers and to notify the spouse of one of the subjects and held them until the spouse arrived on the scene thus placing him and all parties involved in a very hostile situation. This is the second such situation almost identical in nature where a spouse was called to the scene where a couple was sitting in this cove. This reckless behavior has placed the lives of seven individuals in danger including you and potentially disrupted one marriage. Your actions have placed you in violation of DR-135 – Harassment and DR-104, Personal Conduct and I am therefore ordering a three-day suspension for DR-135, Harassment and termination for DR-104, Personal Conduct.

> This discipline is based upon this officer's actions and conduct in this incident and the information contained in the investigative file, as well as, his past disciplinary record, which includes several sustained administrative charges including Harassment, and Personal Conduct.

Officer Lindsey appealed his termination to the Civil Service Commission of the City of Memphis. On October 1, 2004, the Commission heard testimony from the dentist whose office was nearby, from Mrs. Tennant, Mr. Sossaman, Chief Godwin, Retired Chief Cook, Officer Lindsey's

---

[3] According to Chief Godwin's testimony, when determining the appropriate level of discipline, the officer's investigative file is considered including his disciplinary resume.

union representative, a Memphis Police Department counselor, another officer who attended the hearings, another police chief, and Officer Lindsey. Officer Lindsey maintained that he had asked Mrs. Tennant for the phone number of someone who could verify her story, and he did not intend to call her husband. Officer Lindsey's union representative testified that it was not unusual for an officer to call a third party to verify someone's identity. Chief Godwin testified that there was no reason to contact someone's home unless one was dealing with a child and contacted his or her parents. He also testified that there was no reason to contact a spouse. In addition, Chief Godwin testified that once Officer Lindsey had determined that there were no warrants against these individuals, they should have been released, and he should not have detained them further so that he could check or verify their stories.

Following the October 2004 hearing before the Civil Service Commission, one of the three commissioners recused himself from the Commission because of a conflict of interest. In February 2005, counsel for the City of Memphis and for Officer Lindsey agreed that the matter could be decided by the remaining two commissioners. A consent order to accept the decision of the two commissioners was entered on April 15, 2005. On August 26, 2005, the Civil Service Commission issued its decision reversing the City's action and reinstating Officer Lindsey with full back pay and benefits. The Commission specifically found that "the termination of Officer Lindsey was not reasonable in light of the circumstances."

The City filed a petition for writ of certiorari and supersedeas in Shelby County Chancery Court, which the chancellor denied by order on May 2, 2006. The City filed its notice of appeal to this Court on June 1, 2006.

## II. ISSUE PRESENTED

We restate the issue presented by the parties as whether the trial court erred when it affirmed the Commission's finding that the City failed to show a reasonable basis for terminating the employment of Officer Lindsey under DR-104.[4] For the following reasons, we reverse the decision of the trial court and uphold the determination of the City of Memphis to terminate Officer Lindsey's employment with the Memphis Police Department.

## III. STANDARD OF REVIEW

Section 246 of the Memphis City Charter provides that "[t]he City may terminate, suspend, or demote an employee for just cause . . . . Just cause shall exist when the employer had a reasonable basis for the action taken." Section 248 of the Charter states that upon appeal to the Civil Service Commission, "[t]he burden of proof required to sustain the action of the City shall be by a preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained."

---

[4] Officer Lindsey did not appeal the suspension for violating DR-135 – Harassment, and that issue is not before this Court.

Therefore, the Commission was required to affirm the City's decision if it had proved, by a preponderance of the evidence, that it had a reasonable basis for terminating Officer Lindsey.

Judicial review of decisions of civil service commissions is conducted in conformity with the Uniform Administrative Procedures Act, as set forth in Tenn. Code Ann. § 4-5-322. *City of Memphis v. Civil Serv. Comm'n*, No. W2004-00091-SC-R11-CV, slip op. at 5-6 (Tenn. 2007) (citing Tenn. Code Ann. § 27-9-114 (Supp. 2003)). Section 4-5-322(h) authorizes this Court to reverse or modify the Commission's decision if its findings, inferences, conclusions or decisions were:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2005). Of these grounds, "only the last two relate to the sufficiency of the evidence." *City of Memphis*, slip op. at 6.

In its broadest sense, the [arbitrary or capricious] standard requires the court to determine whether the administrative agency has made a clear error in judgment. An arbitrary [or capricious] decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion.

Likewise, a reviewing court should not apply [the] "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." . . . The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

*Id.* at 6-7 (quoting *Jackson Mobilphone Co., Inc. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110-111 (Tenn. Ct. App. 1993)). A decision that is unsupported by substantial and material evidence qualifies as arbitrary and capricious, but a decision with adequate evidentiary support may also be arbitrary and capricious. *Id.* at 6. As such, our review is confined to determining whether the

-6-

Commission's finding (that the City failed to show that termination was reasonable) had insufficient evidentiary support or, in the alternative, was arbitrary and capricious. *Id.*

## IV. DISCUSSION

### A. The City's Reasoning for Termination

In determining the substantiality of the evidence, the hearing officer's initial order is "a relevant and important part of the administrative record" to be considered. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 824 (Tenn. Ct. App. 2005). The hearing summary prepared by Chief Godwin states that when Officer Lindsey received the negative warrant information on the suspects, they should have been released. However, Officer Lindsey "called the female's spouse to the scene without cause." Chief Godwin found that "Officer Lindsey took it upon himself to obtain phone numbers and to notify the spouse of one of the subjects and held them until the spouse arrived on the scene thus placing him and all parties involved in a very hostile situation." The summary also mentions a memo prepared by Officer Lindsey's superior officer, which stated that when the superior officer advised Officer Lindsey about how he should have handled the situation, Officer Lindsey responded "in a very sarcastic way." Chief Godwin noted that "[p]olice officers are frequently required to make decisions affecting human life and liberty in difficult situations" and that "[l]aw enforcement requires an officer to have the stamina, intelligence, moral courage and emotional stability necessary to fairly and impartially deal with human beings in the many complicated and potentially explosive situations, which he or she encounters." The summary then mentions that Officer Lindsey was asked about another incident that had occurred at that location, and Officer Lindsey stated that he had contacted another man's spouse, that she had showed up at the scene, and that "he was released to the custody of his wife . . . ." Chief Godwin concluded that, based upon this incident and the information in Officer Lindsey's investigative file, he should be terminated for violating DR-104 Personal Conduct.

At the hearing before the Commission, Officer Lindsey's card file was introduced that revealed that he had ten previously sustained violations of departmental policy. **(Ex.4).** Several performance reports were also introduced which commended his handling of certain incidents and generally rated Officer Lindsey's performance as average. The reports also reflected, however, that Officer Lindsey had been suspended from duty twice in 2003 for violations unrelated to the incident with Mrs. Tennant.

### B. The Commission's Reasoning for Reinstatement

The Commission noted in its decision that when Officer Lindsey called Mr. Tennant from the scene, "[a]pparently, at that time, he did not know that the telephone number he called was that of the spouse of the female." The Commission further found that:

> The administrators [Chief Godwin] concluded that Officer Lindsey's behavior had placed the lives of several individuals in danger, including that of Officer Lindsey, and that Officer Lindsey had intentionally disrupted the marriage of the subject female and her spouse. However, no further evidence was presented to indicate any adverse consequences to any of the parties as a result of the actions of Officer Lindsey on the date in question.
>
> . . .
>
> After extensive review of the evidence, the consideration of arguments of the counsel, and after full deliberation, the remaining Commissioners of the hearing panel unanimously agreed that the termination of Officer Lindsey was not reasonable in light of the circumstances.

In sum, the Commission apparently concluded that the City failed to prove that terminating Officer Lindsey for violation of DR-104 was reasonable since Officer Lindsey may not have intended to call the spouse to the scene. After a thorough review of the record, we find no reasonably sound factual basis for the Commission's decision and conclude that it is erroneous.

Even the "substantial and material evidence" standard requires a searching and careful inquiry that subjects the commission's decision to close scrutiny, and a court's deference to a commission's expertise is "no excuse for judicial inertia." *Freedom Broadcasting of TN, Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002); *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999). Again, DR-104 reads as follows:

> The *conduct* of each member, both on and off duty, is expected to be such that *it will not reflect adversely* on other members, the Department, the City of Memphis, or the law enforcement profession. This regulation applies to both the professional and private conduct of all members. It prohibits *any and all conduct* which is contrary to the letter and spirit of departmental policy and procedure which would reflect adversely upon the Department or its members. It includes not only all unlawful acts of members but also acts which although not unlawful in themselves, would violate the Law Enforcement code of ethics, and would degrade or bring disrespect upon the member of the Department.

(emphasis added). It is clear that DR-104 seeks to address the appearance of conduct and the public perception of the police department and its members. Regardless of whether Officer Lindsey intentionally or accidentally contacted Mrs. Tennant's spouse, specifically, the result is the same. Chief Godwin testified that it was improper to call someone to verify the story of an adult. As our Supreme Court recently noted in *City of Memphis*, "even if [the officer's] intentions were honorable, his conduct was not. There is simply no substantial and material evidence which contradicts his violation of a departmental rule [DR-104]." Slip op. at 7. In this case, putting Officer Lindsey's questionable intentions aside, the City clearly demonstrated that his misconduct disrupted a marriage and placed several individuals in a very hostile and dangerous situation. These actions certainly reflected adversely on the police department and its members. The City also established that Officer Lindsey had many other sustained violations of departmental policy. In our view, a reasonable person would necessarily conclude that the City had demonstrated a reasonable basis for terminating Officer Lindsey. Substantial and material evidence does not support the Commission's decision to order reinstatement.

### C. Other Arguments

Officer Lindsey presents several other arguments to this Court in support of his contention that he should be reinstated. First, he describes an incident involving another officer who stopped an employee driving a company van, decided to arrest the employee, and called the employer to inform him of the arrest so that the van could be picked up rather than towed. Officer Lindsey claims that since the other officer was only suspended and sent to remedial training, he has been subjected to "disparate treatment." We find that the present case is clearly distinguishable from the other incident and that Officer Lindsey's argument is without merit.

Next, Officer Lindsey claims that the Commission was required to issue its decision within 90 days of his hearing pursuant to T.C.A. § 4-5-314. The statute specifically provides:

> (g) A final order . . . shall be rendered in writing within ninety (90) days after conclusion of the hearing or after submission of proposed findings in accordance with subsection (f) unless such period is waived or extended with the written consent of all parties or for good cause shown.

Tenn. Code Ann. § 4-5-314(g) (2005). However, courts have previously held that this statute is "directory rather than mandatory," especially in cases where no prejudice has been shown, and that violation of the 90-day rule does not nullify the resulting order. *Garrett v. State, Dep't of Safety*, 717 S.W.2d 290, 291 (Tenn. 1986); *Daley v. Univ. of Tenn. at Memphis*, 880 S.W.2d 693, 695 (Tenn. Ct. App. 1994). Because Officer Lindsey has not shown that he was prejudiced by the delay, and because the Commission's decision appears to have been delayed because one of the commissioners recused himself after the hearing, we find no error by the Commission.

Officer Lindsey also argues that the two charges brought against him (Harassment and Personal Conduct) were duplicative and based upon the same set of facts. He made the same argument before the Commission, but it apparently did not accept his theory and proceeded with the hearing. In support of his position, Officer Lindsey cites a prior decision of the Civil Service Commission dismissing a DR-104 Personal Conduct charge when a DR-108 Truthfulness violation was also charged and it more specifically addressed an officer's single act of untruthfulness. We have encountered other cases, however, in which DR-104 charges have been sustained along with other DR violations based upon different facts arising out of a single incident. *See, e.g.*, ***Pruitt v. City of Memphis***, No. W2004-01771-COA-R3-CV, slip op. at 4 (Tenn. Ct. App. Aug. 24, 2005). In the case at bar, Chief Godwin testified that there were several issues involved in Officer Lindsey's mishandling of the incident which gave rise to the charges, such as his failure to release the individuals upon learning that there were no warrants or possible criminal charges against them. **(Vol.3, p.71).** Because DR-104, by its terms, encompasses "any and all conduct which is contrary to the letter and spirit of departmental policy and procedure," we find no error in its application to the facts of this case.

Finally, Officer Lindsey contends that he was subjected to "double jeopardy" because two disciplinary hearings were held by the Memphis Police Department. However, our review of the record reveals that after the first hearing, Officer Lindsey's discipline was merely being postponed pending his psychological evaluation. The first hearing officer testified that Officer Lindsey was expected to return for another hearing during which his discipline would be determined. The fact that the first hearing officer resigned and a different hearing officer concluded the matter does not mean that Officer Lindsey was somehow not subject to discipline. Nor does it entitle him to be disciplined in the way that he assumed that the first hearing officer might decide. This issue is also without merit.

## V. CONCLUSION

The Commission's determination that the City failed to show a reasonable basis for terminating Officer Lindsey is not supported by substantial and material evidence in this case. Because we find that the Commission erred by reinstating Officer Lindsey, we reverse the decision of the chancery court and uphold the decision of the City of Memphis terminating Officer Lindsey's employment with the Memphis Police Department. Costs of this appeal are taxed to Appellee, Richard Lindsey, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-10-