The TENNESSEE FARMERS' COOPERATIVE, Plaintiff-Appellant,

v.

The STATE of Tennessee, acting By and Through Donald JACKSON, the Commissioner of Revenue for the State of Tennessee, Defendant-Appellee.

Supreme Court of Tennessee, at Nashville.

Aug. 31, 1987.

George A. Dean, Sheree C. Wright, Speight & Parker, Nashville, for plaintiff-appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., H. Rowan Leathers, III, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

DROWOTA, Justice.

This is a direct appeal from the dismissal of a tax refund suit brought pursuant to T.C.A. §§ 16–4–108 and 67–1–901. The Plaintiff is the Tennessee Farmers' Cooperative, a farm supply cooperative that owns and operates a number of manufacturing facilities in this State. The issue on appeal is whether Plaintiff is entitled to claim the tax rate reduction or tax exemption allowed to manufacturers under T.C.A. § 67–6–206, a provision of the Retailers' Sales Tax Act, T.C.A. §§ 67–6–101, *et seq.*

Plaintiff is owned by and services numerous local farm cooperatives and among its facilities are three major production and distribution centers located at Jackson (West Tennessee), LaVergne (Middle Tennessee), and Tenco (East Tennessee). The principal offices for the cooperative are at the LaVergne location. Not only does Plaintiff purchase farm supplies for resale to members but it also produces feed and fertilizer. Each of the three production facilities has a separate tax registration number and is treated separately for tax purposes. The Commissioner of Revenue (Commissioner) conducted a tax audit of each location, covering the period from October 1, 1980 to September 30, 1983. Upon completion of the audits on November 10, 1983, the Commissioner assessed two locations, Jackson and LaVergne, for additional taxes of $190,006.28, plus $62,438.67 in interest, totaling $252,444.95; no penalties were imposed. The amount of additional taxes represented the difference between the taxes Plaintiff had previously paid at the reduced rate permitted under T.C.A. § 67–6–206 and the full rate of taxation set by the Retailers' Sales Tax Act. Applying what is known as the 51 percent test, the Commissioner determined that Plaintiff manufactured or processed for resale less than 51 percent of the gross sales made at these two locations and thus that Plaintiff's principal business did not constitute manufacturing within the meaning of T.C.A. § 67–6–206. According to the Commissioner's audit, the Jackson facility manufactured 40 percent of its gross sales and the LaVergne facility manufactured only 25 percent of its gross sales. In assessing the additional taxes and denying manufacturer's status to Plaintiff, the Commissioner attributed all direct sales [1] made by Plaintiff to the LaVergne corporate headquarters. Plaintiff filed a protest against the Commissioner's determination that it was not a manufacturer on January 24, 1984; the Commissioner denied the protest by letters dated July 5 and July 16, 1984, stating that Plaintiff's principal selling activity at these locations did not constitute 51% of the tangible personal property manufactured at these locations. On July 13 and July 17, 1984, Plaintiff paid the assessment under protest and on November 13, 1984, filed this action to recover taxes paid under protest pursuant to the requirements of T.C.A. § 67–1–901.

Trial was held on July 24, 1986, in the Chancery Court of Davidson County. The evidence consisted solely of the pleadings and stipulations of the parties. Plaintiff presented undisputed evidence that its con-

---

1. These are sales by which orders for farm supplies, which Plaintiff does not produce or otherwise warehouse, are placed through the LaVergne offices for direct shipment to the ultimate consumer.

sumption of water and energy fuels at both locations during the audit period averaged well over 80 percent for manufacturing purposes, that in excess of 65 percent of its employees at both locations were engaged in manufacturing, and that more than 60 percent of the fixed assets at these facilities were employed in manufacturing. Plaintiff's production of feed during the 1980–1983 period supplied approximately 54 percent of the total State feed market and its production of fertilizer supplied 51 percent of the State fertilizer market during this period. In addition, Plaintiff contended that if the direct sales made through the LaVergne offices were excluded, that location manufactured some 41 million dollars worth of the 80.2 million dollars in gross sales made in 1983, exceeding the 51 percent test applied by the Commissioner. The Commissioner has used the 51 percent test on a location-by-location basis to determine the principal business of a taxpayer for at least twenty years. Under this test, to be considered a manufacturer for the purposes of T.C.A. § 67–6–206, the taxpayer is required to manufacture at least 51 percent of the gross sales made at each location. Plaintiff not only manufactures and distributes farm supplies, but, in addition to direct sales, it also purchases and distributes farm supplies for resale.

The Chancellor filed his Memorandum Opinion on July 28, 1986, finding that "[t]he majority of the gross sales from these two locations during the tax years in question were of goods not manufactured at the locations." The Chancellor concluded that the Commissioner's 51 percent test was not inconsistent with the principal business standard embodied in T.C.A. § 67–6–206. Although recognizing that Plaintiff had separately metered its consumption of energy fuels and water in apparent compliance with T.C.A. § 67–6–206(b)(3), the Chancellor nevertheless found that the Plaintiff had failed to carry its burden of showing that its principal business was manufacturing and thus it was not entitled to the reduced tax rate and exemption. Judgment dismissing the suit was duly entered on July 28, 1986, and Plaintiff's No-

tice of Appeal was filed on August 25, 1986. We now affirm the judgment of the Chancellor.

Plaintiff makes a logical argument that its activities at the two locations fall within the intended scope of T.C.A. §§ 67–6–206 and 67–6–102(8)(A) (Supp.1986) because its use of industrial machinery and of energy fuels and water is principally for manufacturing, contending that the Commissioner has ignored the primary use of these resources and facilities in determining the principal business in which it is engaged. Plaintiff also maintains that the indiscriminate use of the 51 percent test defeats the purpose for which T.C.A. § 67–6–206 was enacted, which is to encourage industrial development in this State, and that such a test is neither required by the statutory language or by any of the regulations promulgated by the Commissioner. Other factors are relevant to the determination of whether Plaintiff is engaged principally in the manufacture of goods for resale. Furthermore, the Commissioner's inclusion of Plaintiff's direct sales in the gross sales for the LaVergne facility distorts or exaggerates its sales figures and that this does not reflect the actual purchase and warehousing of supplies from other producers by Plaintiff for resale because Plaintiff never stores or ships direct sale goods through any of its locations, acting only to place the orders for supplies that are then shipped directly from the supplier to the ultimate purchaser. When Plaintiff's entire operation is considered, it is predominantly a manufacturer for the purposes of the principal business requirements of the statute.

The principal business standard embodied in the statutes is found in T.C.A. § 67–6–206, which provides:

"67–6–206. *Industrial machinery and raw materials—Exemptions.*—(a) Notwithstanding other provisions of this chapter, tax imposed with respect to industrial machinery as defined in § 67–6–102 shall be at the following rate:

(1) July 1, 1980—June 30, 1981—.75%;

(2) July 1, 1981—June 30, 1982—.50%;

(3) July 1, 1982—June 30, 1983—.25%; and

(4) On and after July 1, 1983, no tax is due with respect to industrial machinery.

(b)(1) Tax at the rate of one percent (1%) is likewise imposed with respect to water when sold to or used by manufacturers. Tax at the rate of one and one-half percent (1 1/2%) shall be imposed with respect to gas, electricity, fuel oil, coal and other energy fuels when sold to or used by manufacturers.

(2) For the purpose of this subsection a manufacturer is defined as one whose principal business is fabricating or processing tangible personal property for resale.

(3) Such substances shall be exempt entirely from the taxes imposed by this chapter whenever it may be established to the satisfaction of the commissioner, by separate metering or otherwise, that they are exclusively used directly in the manufacturing process, coming into direct contact with the article being fabricated or processed by the manufacturer, and being expended in the course of such contact. Whenever the commissioner determines that the use of such substances by a manufacturer meets said test, he shall issue a certificate evidencing the entitlement of the manufacturer to the exemption, and a certified copy thereof shall be furnished by the manufacturer to his supplier of such exempt substances. The certificate may be revoked by the commissioner at any time upon a finding that the conditions precedent to the exemption no longer exist. His action as to the granting or revoking of a certificate shall be reviewable solely by a petition for common law certiorari addressed to the chancery court of Davidson County.

(4) Any water or energy fuel used by a manufacturer in fabricating or processing tangible personal property for resale shall be exempt entirely from the taxes imposed by this chapter when same are produced or extracted by the manufacturer himself from facilities owned by him or in the public domain."

T.C.A. § 67–6–102(8)(A) (Supp.1986) defines industrial machinery for the purpose of the foregoing provision:

"(8) 'Industrial machinery' means:

(A) Machinery, apparatus, and equipment with all associated parts, appurtenances, and accessories, including repair parts and any necessary repair or taxable installation labor therefor, which is necessary to and primarily for the fabrication or processing of tangible personal property for resale, and consumption off the premises or equipment primarily used for air pollution control or water pollution control, where the use of such machinery or equipment is by one who engages in such fabrication or processing as his principal business...."

Plaintiff comes to this Court with "the heavy and exacting burden of proving the error in the assessment," *Stratton v. Jackson,* 707 S.W.2d 865, 867 (Tenn.1986). Moreover, while tax statutes are generally construed in favor of the taxpayer, *Moto-Pep, Inc. v. McGoldrick,* 202 Tenn. 119, 128, 303 S.W.2d 326, 330 (1957), "[i]n a suit against the State by a taxpayer claiming exemption from taxation, the taxing statute is construed strictly against the taxpayer. The burden is on the taxpayer to establish his exemption. The presumption is against the exemption, and exemption from taxation will not be read into a taxing statute by implication." *Hamilton National Bank v. McCanless,* 176 Tenn. 570, 574, 144 S.W.2d 768, 769–770 (1940) (citations omitted). *See also LeTourneau Sales & Service, Inc. v. Olsen,* 691 S.W.2d 531, 534 (Tenn.1985); *Woods v. General Oils, Inc.,* 558 S.W.2d 433, 435 (Tenn.1977); *American National Bank and Trust Co. of Chattanooga v. MacFarland,* 209 Tenn. 263, 268–269, 352 S.W.2d 441, 443 (1961).

■ No dispute exists in this case that Plaintiff's operations consist in substantial part of manufacturing for resale; however, the audit revealed that the sales of goods by Plaintiff at each location did not consist of at least 51 percent of goods manufactured at these two locations. *Cf.* T.C.A. § 67–6–102(5) (defining fabricating or processing tangible personal property for resale). The record shows that three selling activities were conducted by Plaintiff: (1)

sales of its manufactured goods; (2) sales of goods purchased and warehoused by Plaintiff for resale; and (3) handling direct sales orders. When the proportion of sales of purchased goods for resale exceeds that of sales of manufactured goods, then a taxpayer is no longer engaged in the principal business of manufacturing goods for resale for the purposes of T.C.A. § 67–6–206(b)(2). The 51 percent test utilized by the Commissioner bears a rational relation to making this determination.

■ That Plaintiff may use more than 51 percent of its fuel and water consumption solely for manufacturing does not necessarily mean that it is engaged in the "principal business at a specified location [of] fabricating or processing tangible personal property for resale and for ultimate use or consumption off of his premises," Tenn.Admin.Comp. 1320–5–1–.15(2), because the costs related to manufacturing goods might well exceed that of selling goods. If a business both sells and manufactures at one location, the relationship between consumption of utilities for manufacturing as compared to that for selling activities does not reveal which is the principal business of the taxpayer, and consumption of utilities is not the proper standard on which the Retailers' Sales Tax is computed. Rather, the Retailers' Sales Tax Act specifically requires that "the tax is to be computed on gross sales for the purpose of remitting the amount of tax due the state and is to include each and every retail sale." T.C.A. § 67–6–202. *See also* T.C.A. § 67–6–102(7) (Supp.1986) (defining gross sales). Thus, not only do all of Plaintiff's sales activities form the proper basis on which the Commissioner evaluates the principal business of a taxpayer, but, absent some proof to the contrary in the record, we must conclude that the Commissioner was justified in including the direct sales made by Plaintiff through the LaV-

ergne offices. Plaintiff's contention that such sales should not be included stares in the face of the plain language of these statutory provisions. *Cf. Standard Advertising Agency, Inc. v. Jackson,* 735 S.W.2d 441 (1987) (acting in the capacity of an agent does not of itself insulate sales from taxation).

■ Separate metering of water and fuel consumption as provided in T.C.A. § 67–6–206(b)(3) is not only subject to the statute's principal business standard, as determined by sales, but for this subsection to be operative "the commissioner [must first determine] that the use of such substances by a manufacturer meets said test" in T.C.A. § 67–6–206(b)(2) and "issue a certificate evidencing the entitlement of the manufacturer to the exemption.... The certificate may be revoked by the commissioner at any time upon a finding that the conditions precedent to the exemption no longer exist." *See also* Tenn.Admin.Comp. 1320–5–1.15(3), (4). The record contains no proof that this was in fact done.[2] *Accord Scholl, Inc. v. Jackson,* 731 S.W.2d 893, 894–895 (Tenn.1987) (no showing that taxpayer had complied with the regulations or statutory requirements regarding resale certificates).

■ The Commissioner has utilized the 51 percent test for at least twenty years and "[t]he Commissioner's interpretation is not 'palpably erroneous' and has been unchallenged for a substantial period. *See Gallagher v. Butler,* 214 Tenn. at 142, 378 S.W.2d at 166." *Neff v. Cherokee Insurance Co.,* 704 S.W.2d 1, 6 (Tenn.1986). While an administrative interpretation of a statute is not binding on a court, *Moto-Pep, Inc. v. McGoldrick, supra,* 202 Tenn. at 129, 303 S.W.2d at 330, the 51 percent test is consistent with the express statutory language of T.C.A. §§ 67–6–202 and 67–6–206. Tax statutes are construed *in pari materia. See, e.g., Art Pancake's United Rent-All v. Ferguson,* 601 S.W.2d 926, 930

**2.** Plaintiff's "Application for Permanent Industrial Machinery Exemption And/Or Energy Fuel and Water Exemption or Reduced Rate" for the Jackson Feed Mill is in the record, but its approval was effective January 1, 1986. No proof of such an application or approval covering the tax period in question is in the record. Al-

though Plaintiff stated that the Commissioner had previously allowed the tax reduction or exemption, the Commissioner was justified in acting on the results of the audits. *See Gallagher v. Butler,* 214 Tenn. 129, 140, 378 S.W.2d 161, 169 (1964).

(Tenn.App.1979). We do not disagree with the Plaintiff that the Commissioner could devise another test than the 51 percent test to determine whether a taxpayer is a manufacturer within the meaning of T.C.A. § 67–6–206, but we cannot say that this test bears no rational relation to the statutory requirement; rather, the test is not only consistent with the intent of the statute but it also incorporates the basis on which the Retailers' Sales Tax is computed (i.e., gross sales).

We recognize the service performed by Plaintiff for Tennessee farmers, but Plaintiff has not shown this Court that it is entitled to the exemption or tax rate reduction during the tax period in question. Accordingly, we affirm the decision of the Chancery Court. The costs are taxed to the Plaintiff. The case is dismissed.

HARBISON, C.J., and FONES, COOPER and BROCK, JJ., concur.