# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### NOVEMBER 3, 2004 Session

## ALLEY-CASSETTY COAL CO., INC. v. RUTH JOHNSON, Commissioner of the Tennessee Department of Revenue

### Direct Appeal from the Chancery Court for Davidson County
No. 00-2758-II    Carol McCoy, Chancellor

---

### No. M2003-02327-COA-R3-CV - Filed March 29, 2005

---

This appeal involves a trial court's grant of summary judgment to the Tennessee Department of Revenue. The taxpayer operates a brick and block business on a ten-acre tract of land in Murfreesboro, Tennessee, on which is located a block manufacturing facility and retail sales office. Upon undertaking an audit of the taxpayer, the department inspected the property in Murfreesboro. The department subsequently assessed a sales and use tax liability against the taxpayer for the Murfreesboro property. The department determined that the Murfreesboro property constituted one location, and sales of concrete blocks manufactured at the facility constituted less than fifty-one percent (51%) of the gross sales at this location. The taxpayer filed an action in the trial court alleging it was entitled to a sales tax exemption under section 67-6-206 of the Tennessee Code because it operated two "locations" at the Murfreesboro property under the fifty-one percent (51%) test used by the department. Both parties moved for summary judgment. The trial court granted the department's motion and denied the taxpayer's motion. The taxpayer filed an appeal to this Court. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

John W. Lewis, John R. Wingo, Nashville, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Mary Ellen Knack, Assistant Attorney General, Nashville, TN, for Appellee

# OPINION

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal involves a trial court's grant of summary judgment to a party in the course of the proceedings below. The relevant facts are undisputed.[1] Alley-Cassetty Coal Co., Inc. ("Alley-Cassetty" or "Appellant") operates a brick and block business on a ten-acre tract of land located on New Salem Road in Murfreesboro, Tennessee. The ten-acre tract of land contains three buildings: a concrete block manufacturing facility, a retail sales office, and a warehouse. The entire tract of land is surrounded by a chain-link fence and is accessed by using the only entrance to the property from New Salem Road. A single gravel driveway provides access to all three buildings.

On the tract of land in Murfreesboro, Alley-Cassetty operates two divisions: a Brick Division and a Block Division. The Block Division is located within the concrete block manufacturing facility, and its sole function is to manufacture concrete blocks. The Brick Division is located in the retail sales office and warehouse. The Brick Division, through the retail sales office, sells all of the concrete blocks manufactured by the Block Division, as well as related products manufactured by other entities.

The entire ten-acre tract shares a common address, and Alley-Cassetty pays one property tax bill for the entire ten-acre tract. Both divisions use the same federal tax identification number and the same state sales and use tax registration number. Each division maintains separate managers and employees with job duties unique to their respective division. The managers of each division do not report to each other, but they receive directions directly from Alley-Cassetty's corporate office located in Nashville, Tennessee. The concrete block manufacturing facility and the retail sales office have separate utility meters and receive separate utility bills. Alley-Cassetty maintains separate ledgers and separate profit/loss statements for each division.

In the later part of 1990, the Tennessee Department of Revenue (the "Department" or "Appellee") conducted an audit of Alley-Cassetty's sales and use taxes for the period running from December 1, 1995, to September 30, 1998. As part of its audit, the Department inspected the property operated by Alley-Cassetty on New Salem Road in Murfreesboro. The Department determined that sales of concrete blocks by the retail sales office on the New Salem Road property constituted less than fifty-one percent (51%) of the entire gross sales received at this particular facility. In fact, the audit revealed that sales of concrete blocks manufactured by the Block Division through the retail sales office amounted to only forty-one percent (41%) of Alley-Cassetty's gross sales at this particular facility.

---

[1] The parties submitted a "Stipulated Statement of Undisputed, Material Facts" to the chancery court for purposes of their respective motions for summary judgment.

On January 25, 2000, the Department issued a Notice of Assessment to Alley-Cassetty which contained a sales and use tax liability of $47,066.11, of which $36,462.00 related to Alley-Cassetty's brick and block business on New Salem Road in Murfreesboro. On September 1, 2000, Alley-Cassetty filed a complaint in the Chancery Court of Davidson County challenging the Department's assessment of a sales and use tax liability. In particular, Alley-Cassetty alleged that the Department improperly denied Alley-Cassetty the benefit of the sales tax exemption set forth in section 67-6-206 of the Tennessee Code.[2] Alley-Cassetty asserted that the New Salem Road property actually contained two separate businesses at two distinct locations on the same contiguous parcel of land, therefore, the cement block manufacturing plant qualified for the tax exemption.

On January 31, 2003, the Department filed a motion for summary judgment in the chancery court. The Department alleged that Alley-Cassetty's business located on New Salem Road in Murfreesboro did not satisfy the fifty-one percent (51%) test used by the Department in evaluating the availability of a sales tax exemption under section 67-6-206 of the Tennessee Code. "Under this test, to be considered a manufacturer for the purposes of T.C.A. § 67-6-206, the taxpayer is required to manufacture at least 51 percent of the gross sales made at each location." *Tenn. Farmers' Coop. v. State*, 736 S.W.2d 87, 89 (Tenn. 1987) (approving of the Department's use of the fifty-one percent (51%) test in evaluating tax exemptions under the statute).

On March 19, 2003, Alley-Cassetty filed its motion for summary judgment with the chancery court alleging it was not liable for any sales or use taxes for the period specified in the Notice of Assessment filed by the Department. Following a hearing, the chancery court entered a memorandum order on August 18, 2003, granting the Department's motion for summary judgment and denying Alley-Cassetty's motion for summary judgment. The chancery court's memorandum order provided, in relevant part, as follows:

> Here, the company's manufacturing, retail sales, and other business operations occur at the same geographical location. Alley-Cassetty contends that the word "location," as used in *Tennessee Farmers' Cooperative*, supports its claim to the exemption. However, it is the statute, and not the case law, that affords Alley-Cassetty an opportunity to seek an exemption. The word "location" does not appear in the statute. Thus, the inquiry should not be narrowly fixed on the situs of the operations. Instead, a natural and unforced reading of the applicable statutory language clearly focuses on the primary business of the manufacturer, not the location.
> . . . .

---

[2] Pursuant to this statute, a manufacturer is not required to pay sales tax on industrial machinery purchased for use in the manufacturer's business. Tenn. Code Ann. § 67-6-206(a) (2003). In addition, a manufacturer may purchase water, electricity, and various other fuels used in the manufacturing process at reduced tax rates. Tenn. Code Ann. § 67-6-206(b) (2003). A manufacturer may be exempt entirely from the tax on these substances when the Commissioner of the Department determines "they are exclusively used directly in the manufacturing process." Tenn. Code Ann. 67-6-206(b)(3) (2003).

In this instance, the Commissioner audited Alley-Cassetty's retail sales at its sales office and found that less than 51% of its retail sales came from the cement blocks it manufactures. The Commissioner reasonably concluded that cement block manufacturing was not the primary business of Alley-Cassetty and denied the exemption. . . .

Alley-Cassetty filed an appeal to this Court presenting the following issues for our review:

I.      Whether the chancery court erred in finding that the term "location" was not relevant for purposes of the tax exemption under section 67-6-206 of the Tennessee Code; and

II.     Whether Appellant's concrete block manufacturing facility qualifies as a "location," distinct and separate from its retail sales office, thereby qualifying for a tax exemption under the applicable statute.

For the reasons set forth more fully herein, we affirm the decision of the chancery court.

## II.
### STANDARD OF REVIEW

In this case we are presented with undisputed facts, i.e. there is no conflict in the evidence, therefore, the question presented on appeal becomes one of law. *Tibbals Flooring Co. v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994) (citing *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993)). "The standard for reviewing a grant of summary judgment is *de novo* without any presumption that the trial court's conclusions were correct." *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). In addition, we are mindful that:

> Because this case requires us to construe and apply an exemption in the use tax statute, we review familiar rules that are applicable. First, our role in construing statutes is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993). Next, we must determine the legislative intent, whenever possible, from the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). Since exemptions in tax statutes are strictly construed against the taxpayer, the burden is on the taxpayer to establish its exemption. Every presumption is against the exemption and a well-founded doubt is fatal to the claim. *Kingsport Publishing Corp. v. Olsen*, 667 S.W.2d 745 (Tenn. 1984); *Shearin v. Woods*, 597 S.W.2d 895 (Tenn. 1980); *Woods v. General Oils, Inc.*, 558 S.W.2d 433 (Tenn. 1977).

*Tibbals Flooring Co.*, 891 S.W.2d at 198; *see also Norandal USA, Inc. v. Johnson*, No. M2003-00559-COA-R3-CV, 2004 Tenn. App. LEXIS 539, at *15–16 (Tenn. Ct. App. Aug. 20, 2004).

## III.
### LAW AND ANALYSIS

Pursuant to section 67-6-206 of the Tennessee Code, a "manufacturer" owes no tax on industrial machinery purchased for use in the manufacturer's business. Tenn. Code Ann. § 67-6-206(a) (2003). A "manufacturer" may purchase water, electricity, and other fuels at reduced tax rates, Tenn. Code Ann. § 67-6-206(b)(1) (2003), however:

> Such substances shall be exempt entirely from the taxes imposed by this chapter whenever it may be established to the satisfaction of the commissioner, by separate metering or otherwise, that they are exclusively used directly in the manufacturing process, coming into direct contact with the article being fabricated or processed by the manufacturer, and being expended in the course of such contact. Whenever the commissioner determines that the use of such substances by a manufacturer meets such test, the commissioner shall issue a certificate evidencing the entitlement of the manufacturer to the exemption, and a certified copy thereof shall be furnished by the manufacturer to the manufacturer's supplier of such exempt substances. The certificate may be revoked by the commissioner at any time upon finding that the conditions precedent to the exemption no longer exist. . . .

Tenn. Code Ann. § 67-6-206(b)(3) (2003). The term "manfuacturer" is defined as "one whose principal business is fabricating or processing tangible personal property for resale." Tenn. Code Ann. § 67-6-206(b)(2) (2003).

The chancellor correctly noted the absence of the term "location" in the statute. However, the Department has utilized a fifty-one percent (51%) test in evaluating the availability of the statutory exemption to a given taxpayer. The Tennessee Supreme Court has expressly recognized the Department's use of this test, stating:

> The Commissioner has used the 51 percent test on a *location-by-location* basis to determine the principal business of a taxpayer for at least twenty years. Under this test, to be considered a manufacturer for the purposes of T.C.A. § 67-6-206, the taxpayer is required to manufacture at least 51 percent the gross sales made *at each location*.

*Tenn. Farmers' Coop. v. State*, 736 S.W.2d 87, 89 (Tenn. 1987) (emphasis added). The supreme court went on to state:

-5-

The Commissioner has utilized the 51 percent test for at least twenty years and "the Commissioner's interpretation is not 'palpably erroneous' and has been unchallenged for a substantial period. . . ." While an administrative interpretation of a statute is not binding on a court, . . . the 51 percent test is consistent with the express statutory language of T.C.A. §§ 67-6-202 and 67-6-206. . . . We do not disagree with the Plaintiff that the Commissioner could devise another test than the 51 percent test to determine whether a taxpayer is a manufacturer within the meaning of T.C.A. § 67-6-206, but we cannot say that this test bears no rational relation to the statutory requirement; rather, the test is not only consistent with the intent of the statute but it also incorporates the basis on which the Retailers' Sales Tax is computed (i.e., gross sales).

*Id*. at 91–92 (citations omitted).

Thus, "[i]f at least 51 percent of a taxpayer's revenues *at a given location* are derived from fabricating or processing tangible personal property for resale, the taxpayer is considered to be a manufacturer *at that location*." *Beare Co. v. Tenn. Dep't of Revenue*, 858 S.W.2d 906, 908 (Tenn. 1993) (emphasis added) (citing *Tenn. Farmers' Coop.*, 736 S.W.2d at 91–92)); *see also Freedom Broad. of Tenn., Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 784–85 (Tenn. Ct. App. 2002); *Misenheimer Saw & Tool, Inc. v. Huddleston*, No. 03A01-9406-CH-00226, 1994 Tenn. App. LEXIS 668, at *13–14 (Tenn. Ct. App. Nov. 21, 1994).

Turning to Alley-Cassetty's first issue on appeal, the chancellor stated that "a natural and unforced reading of the applicable statutory language clearly focuses on the primary business of the manufacturer, not its location." On appeal, the Department admits that it too has difficulty with the chancery court's conclusion that the meaning of the term "location" is not an issue under section 67-6-206 of the Tennessee Code. Our supreme court has clearly approved of the Department's use of the fifty-one percent (51%) test on a "*location-by-location basis* to determine the principal business of a taxpayer." *Tenn. Farmers' Coop.*, 736 S.W.2d at 89 (emphasis added). In order to qualify for the statutory tax exemption, "the taxpayer is required to manufacture at least 51 percent of the gross sales made *at each location*." *Id*. (emphasis added). In fact, the supreme court, through its holding in *Tennessee Farmers' Cooperative*, impliedly rejected the taxpayer's argument that the fifty-one percent (51%) test is not required by the statutory language. *Id*. Thus, the crux of the present dispute involves the determination of what portions of Alley-Cassety's business operations on New Salem Road constitute the "location" under the fifty-one percent (51%) test used by the Department.

"Once the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." *Davis v. Davis*, No. M2003-02312-COA-R3-CV, 2004 Tenn. App. LEXIS 664, at *18 (Tenn. Ct. App. Oct. 12, 2004) (citations omitted); *see also Barger v. Brock*, 535 S.W.2d 337, 341 (Tenn. 1976). Accordingly, to the extent the chancellor's order ignored the

importance of the term "location" in the Department's decision regarding Alley-Cassetty's "principle business" and sought to apply a different standard, we find error.

We now turn to the second issue raised by Alley-Cassetty on appeal. Alley-Cassetty bears the burden of proving that it qualifies for the statutory sales tax exemption. *Jersey Miniere Zinc Co. v. Jackson*, 774 S.W.2d 928, 930 (Tenn. 1989). Alley-Cassetty does not dispute that the fifty-one percent (51%) test is the proper test for the Department to use in evaluating a manufacturer's business for purposes of the tax exemption statute. Instead, Alley-Cassetty urges this Court to adopt a definition of the term "location" that would permit a taxpayer to qualify as a manufacturer when it operates two distinct businesses, each being a separate location, within the confines of a single parcel of real property.

Alley-Cassetty correctly notes that the courts of this state have not specifically defined what will qualify as a "location" under the fifty-one percent (51%) test used by the Department. In *Beare Company v. Tennessee Department of Revenue*, 858 S.W.2d 906, 907 (Tenn. 1993), our supreme court was asked to apply section 67-6-206 of the Tennessee Code to a food preservation company operating two plants in separate cities in west Tennessee. In evaluating what qualified as "processing" under the definition of a "manufacturer" in the statute, the supreme court found that one plant "produces more than 51 percent of that plant's total revenue, while processing at the [other] plant produces less than 51 percent of the revenue." *Beare Co.*, 858 S.W.2d at 909. Thus, in granting an exemption to one of the taxpayer's plants but not the other, our Supreme Court has impliedly held that a single taxpayer may have separate "locations" for purposes of the sales tax exemption contained in section 67-6-206 of the Tennessee Code. *See id*.

Our research has not identified a Tennessee case addressing whether a taxpayer may have two separate "locations" on a single piece of property for purposes of the sales tax exemption statute. Although the chancery court erred in the reasoning employed in reaching its result in this case, we believe the chancery court reached the correct result nonetheless. While certain factual circumstances may warrant a finding that two separate "locations" exist on the same parcel of property for purposes of the statutory sales tax exemption, this is not that case. Determining what will qualify as a "location" is a fact specific inquiry, and our supreme court has indicated that the Department is permitted to use the fifty-one percent (51%) test on a "location-by-location basis" to determine the taxpayer's principal business. *Tenn. Farmers' Cooperative*, 736 S.W.2d at 89.

Alley-Cassetty attempts to distinguish its concrete block manufacturing facility and retail sales office for purposes of the statute by pointing to the following facts: each division has separate managers and employees who work independent of each other; the divisions receive instructions from the corporate office; they have separate utility meters and separate utility billing; and the company maintains separate ledgers and profit/loss statements for each division. However, these facts do not mask the reality that the two divisions co-exist and are dependent upon one another, thereby forming one "location" for purposes of the fifty-one percent (51%) test utilized by the Department.

The determinative fact in this case is that, as Alley-Cassetty acknowledges, "[a]ll concrete blocks manufactured by the Block Division are sold out of the Brick Division's retail sales office." The record contains no evidence indicating that the Block Division sells the concrete blocks it manufactures independent of the Brick Division. To the contrary, both divisions use the same state sales and use tax registration number. "Under the fifty-one percent test, the Department examines the taxpayer's gross sales receipts to determine whether a majority of the taxpayer's revenues are from fabricating or processing tangible personal property." *Freedom Broad. of Tenn., Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 785 (Tenn. Ct. App. 2002); *see also* Tenn . Code Ann. § 67-6-202(a) (2003); *Tenn. Farmers' Coop.*, 736 S.W.2d at 91. Since all sales of concrete blocks manufactured by Alley-Cassetty at the New Salem Road facility go through the retail sales office, the Department properly characterized the entire property as one "location" for purposes of the sales tax exemption statute. Stated differently, if the retail sales office did not sell the concrete blocks manufactured by the concrete block facility, there would be no gross sales attributable to the Block Division.

It may very well be that Alley-Cassetty may consume more than fifty-one percent (51%) of its total fuel and water in manufacturing concrete blocks, but "[w]hen the proportion of sales of purchased goods for resale exceeds that of sales of manufactured goods, then a taxpayer is no longer engaged in the principal business of manufacturing goods for resale for purposes of T.C.A. § 67-6-206(b)(2)." *Tenn. Farmers' Coop.*, 736 S.W.2d at 91. "[C]onsumption of utilities is not the proper standard on which the Retailers' Sales Tax is computed." *Id.*

While not determinative in and of themselves, additional facts support the conclusion that the New Salem Road property constitutes one "location" for purposes of the sales tax exemption statute. The entire property is enclosed within one chain-link fence with one road providing access to the entire property. The entire property is designated by a single street address, and Alley-Cassetty receives one property tax bill for the entire New Salem Road property. Finally, both divisions use the same federal tax identification number.

We find that the New Salem Road facility operated by Alley-Cassetty constitutes one "location" for purposes of the fifty-one percent (51%) test used by the Department in applying the sales tax exemption statute. Alley-Cassetty does not dispute that the concrete blocks manufactured at the New Salem Road facility accounted for only forty-one percent (41%) of the gross sales from the retail sales office. Accordingly, we affirm the chancery court's grant of summary judgment to the Department.

**IV.**
**CONCLUSION**


For the reasons contained herein, we affirm the chancery court's grant of summary judgment to the Appellee. Costs of this appeal are to be taxed to the Appellant, Alley-Cassetty Coal Co., Inc., and its surety, for which execution may issue if necessary.


_____
ALAN E. HIGHERS, JUDGE